# MERCHANTS' NATIONAL BANK OF RICHMOND, VIRGINIA, v. CITY OF RICHMOND.

ERROR TO THE SUPREME COURT OF APPEALS OF THE STATE OF VIRGINIA.

No. 240. Argued March 21, 1921.—Decided June 6, 1921.

1. A judgment of a state supreme court sustaining a state statute and a city ordinance imposing taxes, over the objection that as construed and applied they are repugnant to a law of the United States, is reviewable here by writ of error. P. 637.

·2. Where the state court omits to find the facts relevant to a question of federal law, it is the duty of this court to examine the evidence on the subject. P. 638.

3. In the provision of Rev. Stats., § 5219, respecting state taxation of shares of national banks, that it "shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such State," the words "moneyed capital in the hands of individual citizens" include bonds, notes and other evidences of indebtedness in the hands of individuals, which are shown to come materially into competition with the national banks in the loan market. P. 638.

124 Virginia, 522, reversed; application for writ of certiorari denied.

THE case is stated in the opinion.

*Mr. Legh R. Page,* with whom *Mr. E. Warren Wall* was on the briefs, for plaintiff in error.

*Mr. H. R. Pollard* and *Mr. George Wayne Anderson,* for defendant in error, submitted.

MR. JUSTICE PITNEY delivered the opinion of the court.

The court of last resort of Virginia sustained a tax assessed by the City of Richmond in the year 1915, in form against plaintiff in error, a national banking association, in substance and effect against its shareholders, overruling a contention based upon the Constitution and laws of the United States. To review its judgment a writ of error has been sued out and allowed, and application has been made also for the allowance of a writ of certiorari. The proceeding originated in the Hustings Court of the City of Richmond with a petition filed by the Bank against the City to correct the assessment as erroneous. The first hearing resulted in an order granting the relief prayed for, upon grounds not now material; but, upon review by the Supreme Court of Appeals this was reversed (124 Virginia, 522), and the case remanded

for further proceedings in conformity with the views of
that court; in consequence of which, correction of the
alleged erroneous assessment was refused by the trial
court, and the proceeding dismissed. An application
for a writ of error to review this judgment was denied
by the Supreme Court of Appeals, with the effect of affirm-
ing the judgment of the Hustings Court.

The tax was imposed pursuant to an ordinance approved
April 9, 1915, passed under the powers conferred upon the
City by its charter and an act of the General Assembly
approved March 15, 1915 (Virginia Acts 1915, c. 85, p.
119). The opinion of the court of last resort shows that
plaintiff in error drew in question the validity of the
ordinance and statute, as construed and applied, upon
the ground of their alleged repugnance to § 5219, Rev.
Stats., and that the court sustained their validity not-
withstanding. Under § 237, Jud. Code, as amended by
Act of September 6, 1916, c. 448, 39 Stat. 726, a writ of
error is the appropriate process for reviewing the final
judgment in this court, and the petition for allowance
of a writ of certiorari will be denied.

It will not be necessary to recite the provisions of the
statute and ordinance, beyond saying that, taken in
connection with another act of the General Assembly,
approved March 17, 1915 (Virginia Acts 1915, c. 117, p.
160), they authorized the imposition for the year 1915
upon bank stocks, state and national, of a tax for state
purposes at the rate of 35 cents and a tax for city purposes
at the rate of $1.40—a total of $1.75—upon the $100 of
valuation, while upon intangible personal property in
general, including bonds, notes, and other evidences of
indebtedness, the state rate was 65 cents and the city
rate 30 cents, an aggregate of 95 cents, upon each $100
of valuation.

The Bank's petition alleged, and the evidence showed
without dispute, that in the City of Richmond, in 1915,

city and state taxes at the rates first mentioned were imposed upon national bank stocks (including that of plaintiff in error) to the aggregate value of more than $8,000,000 and stocks of state banks and trust companies to the value of $6,000,000 and upwards, while taxes at the lower aggregate rate of 95 cents per $100—city tax 30 cents, state tax 65 cents—were imposed for the same year upon bonds, notes, and other evidences of indebtedness aggregating $6,250,000. It is to be inferred that a substantial part of this aggregate was in the hands of individual taxpayers; the precise amount does not appear. It also was shown by evidence without dispute that moneyed capital in the hands of individuals invested in bonds, notes, and other evidences of indebtedness comes into competition with the national banks in the loan market.

Neither of the state courts passed upon this evidence or made findings of fact thereon; doubtless because, under their respective views of the applicable law, the facts referred to were immaterial. But this omission does not relieve us of the duty of examining the evidence for the purpose of determining what facts reasonably might be, and presumably would be, found therefrom by the state court, if plaintiff in error's contention upon the question of federal law should be sustained, and the facts thereby shown to be material. *Carlson* v. *Curtiss,* 234 U. S. 103, 106.

The Supreme Court of Appeals entertained the view that the purpose of § 5219, Rev. Stats., was confined to the prevention of discrimination by the States in favor of state banking associations as against national banking associations, and that since none such is shown here there was no repugnance to the federal statute. This, however, is too narrow a view of § 5219. It traces its origin to § 41 of the Act of June 3, 1864, c. 106, 13 Stat. 99, 111–112, in which, besides the restriction that state taxation of the shares of national banking associations should not be at a

greater rate than that assessed upon other moneyed capital in the hands of individual citizens of such State, there was an express proviso that the tax should not exceed the rate imposed upon the shares of state banks. But this was modified by Act of February 10, 1868, c. 7, 15 Stat. 34, in a manner which, as was pointed out in *Boyer* v. *Boyer*, 113 U. S. 689, 691–692, precluded the possibility of an interpretation permitting the States, while imposing the same taxation upon national bank shares as upon shares in state banks, to discriminate against national bank shares in favor of moneyed capital not invested in state bank stock. "At any rate," said the court, "the acts of Congress do not now permit any such discrimination." In the amended form the provision was carried into the Revised Statutes as § 5219, which prescribes that state taxation of shares in the national banks "shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such State."

By repeated decisions of this court, dealing with the restriction here imposed, it has become established that, while the words "moneyed capital in the hands of individual citizens " do not include shares of stock in corporations that do not enter into competition with the national banks, they do include something besides shares in banking corporations and others that enter into direct competition with those banks. They include not only moneys invested in private banking, properly so called, but investments of individuals in securities that represent money at interest and other evidences of indebtedness such as normally enter into the business of banking. In *Evansville Bank* v. *Britton*, 105 U. S. 322, 324, the court said: "The act of Congress does not make the tax on personal property the measure of the tax on bank shares in the State, but the tax on moneyed capital in the hands of the individual citizens. Credits; money loaned at interest, and demands against persons or corporations

are more purely representative of moneyed capital than personal property, so far as they can be said to differ. Undoubtedly there may be much personal property exempt from taxation without giving bank shares a right to similar exemption, because personal property is not necessarily moneyed capital. *But the rights, credits, demands, and money at interest mentioned in the Indiana statute, from which bona fide debts may be deducted, all mean moneyed capital invested in that way.* . . . We are of opinion that the taxation of bank shares by the Indiana statute, without permitting the shareholder to deduct from their assessed value the amount of his *bona fide* indebtedness, as in the case of other investments of moneyed capital, is a discrimination forbidden by the act of Congress."

And in *Mercantile Bank* v. *New York*, 121 U. S. 138, the court, speaking by Mr. Justice Matthews, after reviewing previous decisions and pointing out (p. 154) the policy and purpose of the act as the key to its proper interpretation, proceeded to declare (p. 157): "The terms of the act of Congress, therefore, include shares of stock or other interests owned by individuals in all enterprises in which the capital employed in carrying on its business is money, where the object of the business is the making of profit by its use as money. The moneyed capital thus employed is invested for that purpose in securities by way of loan, discount, or otherwise, which are from time to time, according to the rules of the business, reduced again to money and reinvested. *It includes money in the hands of individuals employed in a similar way, invested in loans, or in securities for the payment of money, either as an investment of a permanent character, or temporarily with a view to sale or repayment and reinvestment.* In this way the moneyed capital in the hands of individuals is distinguished from what is known generally as personal property, "—proceeding then to quote the passage we have cited from *Evansville Bank* v. *Britton, supra.*

In *Amoskeag Savings Bank* v. *Purdy,* 231 U. S. 373, 390–391, the above-mentioned declaration of the court in *Mercantile Bank* v. *New York,* 121 U. S. 138, 157, including the citation from *Evansville Bank* v. *Britton,* was repeated, and it was pointed out that the rule of construction thus laid down had since been consistently adhered to. No decision of this court to which our attention is called has qualified that rule, or construed § 5219 as leaving out of consideration the rate of state taxation imposed upon moneyed capital in the hands of individual citizens invested in loans or securities for the payment of money, either for permanent or temporary purposes, where such moneyed capital comes into competition with that of the national banks. Thus, in *Bank of Commerce* v. *Seattle,* 166 U. S. 463, 464, the precise ground of decision was the want of a showing that "the moneyed capital left unassessed was, as to any material portion thereof, moneyed capital coming into competition with that of national banks." To the same effect *First National Bank of Wellington* v. *Chapman,* 173 U. S. 205, 219. In the present case, there is a clear showing of such competition, relatively material in amount, and it follows that, upon the undisputed facts, the ordinance and statute under which the stock of plaintiff in error was assessed, as construed and applied, exceeded the limitation prescribed by § 5219, Rev. Stats., and hence that the tax is invalid.

*Application for writ of certiorari denied.*

*Judgment reversed, and the cause remanded for further proceedings not inconsistent with this opinion.*

MR. JUSTICE BRANDEIS dissents.