**712** People ex rel. Hanover National Bank *v.* Goldfogle.

First Department, July, 1922. [Vol. 202

---

The People of the State of New York ex rel. The Hanover National Bank of the City of New York, Appellant, *v.* Henry M. Goldfogle and Others, as Commissioners of Taxes and Assessments of the City of New York, Constituting the Board of Taxes and Assessments of the City of New York, Respondents.

(Taxes of 1921 — Bank Share Assessments.)

First Department, July 14, 1922.

Taxation — certiorari to review assessment of tax on capital stock of National bank — proceeding authorized under Tax Law — order dismissing writ affirmed — Tax Law construed as imposing only one per cent tax on book value of shares — §§ 352 and 4-a do not conflict with such construction — Personal Income Tax Law construed not to tax dividends from such shares — petition for writ charged discrimination in taxation against owners of shares of National bank stock but relator failed to prove charge — direct tax on shares and income tax on dividends therefrom illegal discrimination — only relief of relator is to have one per cent tax on stock reduced to conform to general rate on other capital upon showing proper basis therefor.

Sections 24-f and 72 of the Tax Law making it the duty of every bank to collect the tax due upon the shares of its stock from the owners thereof and to pay the same and to retain and apply dividends for that purpose, together with the provisions of section 290 of the Tax Law for reviewing a tax assessment by certiorari, authorize a bank to test by a legal proceeding the validity of the tax of one per cent on the book value of such shares provided by section 24-b of said law.

Since section 5219 of the United States Revised Statutes permitting the Legislature

of each State to tax the shares of National banking associations located within the State was enacted long before there was any income tax and contemplates that the tax imposed under such permission shall be the sole tax on such shares, since it is extremely doubtful whether such statute would permit an income tax on the dividends on such shares, and it is quite plain that it would not permit the imposition of taxes on such shares under two systems, only one of which is applied to other moneyed capital, the Tax Law should be construed as intended to impose only the one per cent tax on the book valuation of such shares provided by section 24-b of said law.

The provision of section 352 of the Tax Law, excepting stock in banks and banking associations from the general provisions of said section exempting money, bonds, notes, choses in action and shares of corporate stock, subject to income tax, from being included in the assessment rolls, and the provisions of section 4-a of the Tax Law, also excepting stock in banks and banking associations from the exemptions of intangible personal property from taxation locally for State or local purposes, provided in that section, do not conflict with such construction, as these statutory provisions were enacted to preserve the one system of taxation with respect to such shares authorized by said Federal statute and as theretofore provided by section 24 of the Tax Law.

The provisions of that part of the Tax Law known as the Personal Income Tax Law are to be construed on the assumption that the Legislature recognized that it could not lawfully impose two systems of taxation on such shares and on that theory the phraseology employed, although comprehensive, will be found to be susceptible of a construction that the Legislature did not intend in enacting the Personal Income Tax Law to repeal or supersede the provisions of section 24-c of the Tax Law exempting such shares from all taxation save the one per cent imposed on the book value thereof by section 24-b.

Accordingly, a writ of certiorari issued on the petition of a National bank to review the assessment of its capital stock for the year 1921 by the commissioners of taxes and assessments of the city of New York was properly dismissed, where the petition charged that the Tax Law, as construed and enforced by the State authorities, and particularly in requiring the assessment of the capital stock of National banks at their book value, and in imposing an annual tax of one per cent on such valuation, constitutes an unjust discrimination against the shareholders of such stock in violation of section 5219 of the United States Revised Statutes, but the relator merely showed the application of different systems of taxation, which are permissible, and failed to sustain the burden resting upon it of showing to what extent, if any, the system applied to National bank shares produces a higher rate of taxation than the system applicable to moneyed capital employed in competition with the capital of National banks.

*It seems,* that if it were necessary to construe the Tax Law, as it has been construed and enforced by the State authorities, as imposing a one per cent direct tax on the book value of such shares and, in addition thereto, a personal income tax on the dividends thereon, it is clear that both of such systems could not be sustained, for plainly they have not both been applied to other moneyed capital as to which a discrimination is forbidden.

*It seems,* that since the assessment of such shares upon the local rolls and the imposition of a tax on the book value thereof has been authorized by the Federal statute as construed by the courts, that the only possible relief to which the relator could become entitled would be, upon showing a proper basis therefor, to have the tax of one per cent reduced to conform to the general rate of taxation imposed on other moneyed capital employed in competition with the capital of National banks.

APPEAL by the relator, The Hanover National Bank of the City of New York, from a final order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 19th day of April, 1922, dismissing a writ of certiorari issued to review an assessment of relator's capital stock for local and State taxation for the year 1921 made by the respondents, as commissioners of taxes and assessments of the city of New York, and confirming the assessments for the year 1921 upon the shares of stock in the relator.

The opinion of the Special Term is reported in *People ex rel. Hanover National Bank* v. *Goldfogle* (118 Misc. Rep. 79).

*Morris, Plante & Saxe* [*Martin Saxe* of counsel; *Percy S. Dudley, Charles R. McSparren* and *Curtis A. Peters* with him on the brief], for the appellant. *John Quinn, Clarence E. Schuster, Clarence W. McKay* and *Charles J. Tobin,* amici curiæ, joining in the brief.

*John P. O'Brien, Corporation Counsel* [*William H. King* of counsel; *Eugene Fay* with him on the brief], for the respondents. *Charles D. Newton, Attorney-General, Owen C. Becker, Corporation Counsel of Oneonta, Charles L. Pierce, Corporation Counsel of Rochester, F. J. Cregg, Corporation Counsel of Syracuse, Robert P. Beyer* and *Edward G. Griffin, Deputies Attorney-General, Clarence M. Platt, Deputy Corporation Counsel of Rochester, Henry E. Wilson, First Assistant Corporation Counsel of Syracuse,* amici curiæ.

LAUGHLIN, J.:

Section 24-f of the Tax Law (added by Laws of 1916, chap. 323, as amd. by Laws of 1917, chap. 153) makes it the duty of every bank or banking association to collect the tax due upon its shares of stock from the owners thereof and to pay the same, upon pain of liability therefor and a penalty. Section 72 of the Tax Law makes it the duty of every bank or banking association to retain and apply dividends in payment of taxes assessed upon its capital stock. Section 290 of the Tax Law (as amd. by Laws of 1916, chap. 323) provides that any assessment for property may be reviewed by certiorari at the instance of one assessed and claiming to be aggrieved by reason of the invalidity or overvaluation of the assessment. These provisions plainly authorize the bank to institute an action or proceeding to test the validity of such a tax. (*Peoples Nat. Bank* v. *Marye,* 107 Fed. Rep. 570; *Whitney Nat. Bank* v. *Parker,* 41 id. 402.)

The petition for the writ charges that the Tax Law of the State of New York, as construed and enforced by the authorities of the State, and particularly in requiring the assessment of the shares of the capital stock of National banks at their book value, and in

imposing an annual tax of one per cent on such valuation, constitutes an unjust discrimination against the shareholders of such capital stock, in violation of the provisions of section 5219 of the Revised Statutes of the United States; and the provisions of section 24 of the Tax Law of New York, until amended by chapter 603 of the Laws of 1922, imposed the same limitation upon the taxation of such shares as is contained in the Federal statutes. The contentions of the relator are that under the Tax Law of New York, with certain exceptions which will be considered presently, no tax is imposed upon other moneyed capital in the hands of individual citizens of the State employed in competition with the banks, for the reason that the personal income tax imposed upon property owners, including the owners of such shares of stock, is not a tax upon capital, but that if it be, then with respect to the shares of capital stock of National and State banks and banking associations, there has been imposed upon the owners thereof not only an income tax on the dividends received thereon the same as upon income earned by individuals, but in addition thereto this tax of one per cent on the book value of the shares of stock, without regard to the earnings of the bank or to whether or not surplus earnings have all been distributed in dividends so that the holders of the shares will be obliged to pay a personal income tax thereon, or have been allowed to accumulate in the hands of the banks.

Section 5214 of the Revised Statutes of the United States imposes upon National banks the obligation to pay to the Treasurer of the United States certain duties " in lieu of all existing taxes; " and section 5219 provides that nothing contained in the Federal " National Bank Act "* shall prevent " All the shares in any association from being included in the valuation of the personal property of the owner or holder of such shares, in assessing taxes imposed by authority of the State within which the association is located; but the Legislature of each State may determine and direct the manner and place of taxing all the shares of national banking associations located within the State, subject only to the two restrictions, that the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such State, and that the shares of any national banking association owned by non-residents of any State shall be taxed in the city or town where the bank is located, and not elsewhere. Nothing herein shall be construed to exempt the real property of

---

* See U. S. R. S. tit. 62, as amd., in which are contained the sections herein cited.— [REP.

associations from either State, county, or municipal taxes, to the same extent, according to its value, as other real property is taxed."

The permission conferred by this statute constitutes the only authority of the States to tax the shares of capital stock of a National bank. (*McCulloch* v. *Maryland*, 4 Wheat. 316; *Citizens' Savings Bank* v. *Owensboro*, 173 U. S. 636; *Boyer* v. *Boyer*, 113 id. 689.) Section 24 of the Tax Law of the State of New York, evidently enacted to carry into effect the requirements of the Federal statute, provided, at the time of this assessment, in part as follows: " In assessing the shares of stock of banks or banking associations organized under the authority of this State or the United States, the assessment and taxation shall not be at a greater rate than is made or assessed upon other moneyed capital in the hands of individual citizens of this State. * * * " (See Laws of 1916, chap. 323; Laws of 1909, chap. 62.)

The section further provided that the value of each share shall be ascertained and fixed by adding the amount of the capital stock, surplus and undivided profits, and dividing the result by the number of outstanding shares; but if the bank or banking association is in liquidation, the value of each share of capital stock shall be ascertained by dividing the assets by the number of outstanding shares; and it is further provided therein that the owners of such stock shall be entitled to no deduction from the taxable value of the shares for personal indebtedness or any other reason. Section 24-b (as added by Laws of 1916, chap. 323) imposes a tax of one per cent on the value of the shares as thus ascertained; and section 24-c (added by Laws of 1916, chap. 323, as amd. by Laws of 1920, chap. 84) provides that such tax " shall be in lieu of all other taxes whatsoever for State, county or local purposes upon the said shares of stock, and mortgages, judgments and other choses in action and personal property held or owned by banks or banking associations the value of which enters into the value of said shares of stock shall also be exempt from all other State, county or local taxation." It will be observed that this is a direct tax on the shares of stock to the extent of what is known as the book value thereof, and without regard to whether income has been earned by the bank from the use of the capital for which the shares were issued, or to whether such income has been retained as surplus or distributed as dividends. One very important point to be passed upon in deciding this appeal is whether the shares of bank and banking association stock are by the present Tax Law of New York subjected to *two* systems of taxation while other moneyed capital in the hands of individual

citizens is subjected to one only of such systems and to no other tax. It is to be borne in mind that the Federal statute, which was enacted long before there was any income tax, in terms permits only a tax on the *valuation* of such shares and contemplates that such valuation shall be included in the value of the personal property of the owner or holder of the shares, and that the shares of non-residents shall be taxed only in the city or town where the bank is located. There can be no doubt, therefore, that it was contemplated by the Federal statute, if not intended thereby, that the only tax to which the owners of such shares were to be subjected on account of their capital invested therein and represented thereby . was a tax based on the valuation of the shares; and the same is true with respect to the provisions of the section of the State law imposing the one per cent tax, for when they were enacted there was no income tax and the provisions relating to exemption from other taxation were intended to make the one per cent tax exclusive. The purpose of the Federal statute was to encourage the investment of capital in such shares by protecting the owners thereof against discriminatory State legislation, and, therefore, the restriction in the taxation of such shares by a State necessarily prohibits indirect, as well as direct, discrimination, and applies to taxation of dividends, which is in effect an indirect tax, on the shares of stock (*People ex rel. Central Union Trust Co.* v. *Wendell,* 197 App. Div. 131; affd., 231 N. Y. 629; *Gillespie* v. *Oklahoma,* 257 U. S. 501 [decided Jan. 30, 1922]; 66 L. ed. ——; U. S. Adv. Ops. 1921–22, p. 211; *Pollock* v. *Farmers' Loan & Trust Co.,* 157 U. S. 429, 580), and by our statute is made a lien thereon. (Tax Law, § 351-b, as added by Laws of 1920, chap. 191; Id. § 380, added by Laws of 1919, chap. 627, as amd. by Laws of 1921, chap. 477.) These considerations distinguish the case at bar from *People ex rel. Central Union Trust Co.* v. *Wendell* (197 App. Div. 131; affd., 231 N. Y. 629) and *People ex rel. Clyde* v. *Wendell* (197 App. Div. 913; affd., 232 N. Y. 550) which only involved the *construction* of a statute unaffected by any question of the power of the Legislature.

The value of each share of the relator, determined as provided in the statute, was $810.51 and a fraction of a cent.

The Tax Law of New York, prior to the enactment of the Personal Income Tax Law (Laws of 1919, chap. 627, adding to Tax Law, art. 16, as amd.), and before investment companies were, by section 188-a (as added by Laws of 1917, chap. 707), subjected to a corporation tax, and business corporations were, by article 9-A of the Tax Law (added by Laws of 1917, chap. 726, as amd. by Laws of 1919, chap. 628, and other statutes), subjected to an income tax, was sustained as validly imposing this one per cent

tax upon the book value of the shares of bank and banking association stock, notwithstanding the fact that other moneyed capital employed in competition with the capital of such banks and banking associations was subjected to a different system of taxation, viz., to taxation on the *actual* value thereof, less any indebtedness of the owner, while the one per cent tax against the shares of bank and banking association stock was on book value, which excluded good will and no deduction for debts was allowed. (*Amoskeag Savings Bank* v. *Purdy*, 231 U. S. 373. See, also, *People ex rel. National Park Bank* v. *Cantor*, 111 Misc. Rep. 420; affd., 195 App. Div. 890; affd., 231 N. Y. 514.)

In enacting the Personal Income Tax Law in 1919 the Legislature, by section 351 of the Tax Law, imposed upon every resident of the State an annual tax on his entire net income at the rates therein specified, which are, one per cent of the net income not exceeding $10,000; two per cent of the net income in excess of $10,000 and not in excess of $50,000; and three per cent of the net income in excess of $50,000. But section 352 (as amd. by Laws of 1920, chap. 120), in so far as here material, provides that income taxes "are in addition to all other taxes imposed by law, except that money on hand or on deposit with or without interest, bonds, notes and choses in action and shares of stock in corporations other than banks and banking associations, owned by any individual or constituting a part of a trust or estate subject to the income tax imposed by this article, shall not after July thirty-first, nineteen hundred and nineteen, be included in the valuation of the personal property included in the assessment-rolls of the several tax districts, villages, school districts and special tax districts of the State."

The relator claims that the effect of the provisions of section 351 is to render the income derived by owners of shares of stock in banks and banking associations subject to an income tax at the rates prescribed, and the State Comptroller, under the advice of the Attorney-General, is so enforcing the law. (Opinion of Attorney-General, *Construction of Tax Law, Article XVI*, 22 St. Dept. Rep. 593.) It is quite plain that the effect of section 352 is to leave such shares of stock subject to the one per cent tax on the book value thereof imposed by section 24-b, although by the express provisions of section 352 no shares of corporate stock other than State and National bank shares, and no money on hand or on deposit with or without interest, and no bonds, notes or choses in action owned by any individual, or constituting a part of a trust or estate subject to income tax, is to be included in the valuation of the personal property included in the assessment rolls

with respect to personal property still liable to taxation on its actual value as provided in sections 3 and 6 of the Tax Law. (See Laws of 1914, chap. 277, amdg. said § 6.) I am of opinion that these statutory provisions show that the Legislature understood that shares of stock in National banks and National banking associations could only be taxed on the valuation thereof and that it was not competent for the Legislature to apply thereto the personal income tax which is not imposed or enforced by the local authorities, and that these provisions, now claimed to be discriminatory, were only designed to preserve the right to tax such shares locally on a valuation basis as theretofore. By chapter 647 of the Laws of 1920, the Legislature added section 4-a to the Tax Law, which relates to the " exemption of intangible personal property " and is as follows: " Notwithstanding any provision of this chapter, or of any other general, special or local law, intangible personal property, except shares of stock of banks or banking associations, whether referred to as personal property, capital, capital stock or otherwise, after June thirtieth, nineteen hundred and twenty, shall be exempt from taxation locally for State or local purposes. This exemption shall be in addition to all other exemptions of personal property from local taxation, whether based upon the character, ownership or amount of property. The term ' intangible personal property,' as used in this section, means incorporeal property, including money, deposits in banks, shares of stock, bonds, notes, credits, evidences of an interest in property and evidences of debt."

The effect of this enactment was likewise to continue shares of stock in banks and banking associations subject to the one per cent tax, although all other shares of corporate stock and property employed in competition with the capital represented thereby were exempted from taxation excepting as taxed indirectly by the income tax, and with the exception also, as will be seen presently, that certain of the other corporations are subject to franchise taxes. I construe the exception of the shares of stock in banks and banking associations from the exemptions provided for in that section, as likewise enacted to preserve the one system of taxation with respect to such shares plainly authorized by the Federal statute and as theretofore provided in section 24 of our Tax Law, the provisions of which would have been repealed were it not for this exception. If it were necessary to construe the Tax Law of New York, as it has been construed and enforced by the State authorities, as imposing this one per cent direct tax on the book value of shares and, in addition thereto, a personal income tax on the dividends thereon, I deem it quite clear that both of such systems could not be sustained, for plainly they have not both been applied

to other moneyed capital as to which a discrimination is forbidden. Since, however, the Federal · statute permits the one per cent book valuation tax, and it is extremely doubtful whether in any circumstances the Federal statute would permit an income tax on the dividends on such shares, and it is quite plain that it would not permit the imposition of taxes on such shares under two systems, only one of which is applied to other moneyed capital, our Tax Law should be construed as intended to impose only the one per cent book valuation tax. On that construction, the relator has merely shown the application of different systems of taxation, which is permissible, and has failed to bear the burden resting upon it of showing to what extent, if any, the system applied for National bank shares produces a higher rate of taxation than the system applicable to other moneyed capital employed in competition with the capital of National banks. Notwithstanding the exemptions to which reference has been made, which it is claimed discriminate against the shares of stock of banks and banking associations, the Tax Law by other sections imposes franchise taxes upon other classes of corporations, and those taxes doubtless constitute indirect taxation on the shares of stock in such corporations. Section 25 provides for the taxation of capital invested by an individual banker doing business under a license from the State, but not as a private banker operating without such a license. Section 185 (as amd. by Laws of 1917, chap. 710) imposes a tax of one per cent upon the gross earnings and three per cent on dividends in excess of four per cent with respect to elevated and surface railroads not operated by steam. Section 186 (as amd. by Laws of 1919, chap. 548) imposes a tax of five-tenths of one per cent upon the gross earnings, and three per cent upon the dividends in excess of four per cent, with respect to waterworks companies, gas companies, electric and steam heating, lighting and power companies. And section 184 (as amd. by Laws of 1914, chap. 334) imposes an excise tax or license fee equal to five-tenths of one per cent upon the gross earnings within this State with respect to transportation and transmission corporations and associations not liable to taxation under sections 185 or 186, excepting ferry companies operating in the city of New York under licenses granted by the city. Section 187 (as amd. by Laws of 1919, chap. 625) imposes a tax on insurance companies equal to one per cent on an excess of the gross amount of premiums as therein defined. Section 188 imposes a tax on trust companies equal to one per cent of their capital stock, surplus and undivided profits. Section 188-a (as added by Laws of 1917, chap. 707) imposes a tax on certain investment companies organized under the Banking Law equal to

one and one-half mills on the face value of their capital, and in addition thereto a tax equal to one per cent of their surplus and undivided profits. Counsel for the relator says that the taxes imposed by this section are negligible, for in the years 1919 and 1921 the report of the State Comptroller shows that they aggregated less than $15,000 for the entire State; but such facts were not shown. Section 189 imposes a franchise tax on savings banks equal to one per cent on the par value of their surplus and undivided earnings. Section 191 imposes a tax of five per cent on the amount of interest or compensation of any kind earned and collected by a foreign banker on money loaned, used or employed in this State. Section 209 of the Tax Law (added by Laws of 1917, chap. 726, as amd. by Laws of 1919, chap. 628, and Laws of 1920, chap. 640) imposes a tax to be computed by the Tax Commission on the basis of net income upon every domestic and foreign business corporation; but section 210 of the Tax Law (added by Laws of 1917, chap. 726, as amd. by Laws of 1920, chap. 640) excepts therefrom corporations wholly engaged in the purchase, sale and holding of real estate, and holding corporations whose principal income is derived from holding the stocks and bonds of other corporations, and corporations liable to a tax under sections 184 to 189 inclusive, and banks, savings banks, institutions for savings, title guaranty, insurance or surety corporations, which by section 210 are wholly exempted from the taxes imposed by article 9-A of the Tax Law (*supra*), which embraces sections 208 to 219-1 inclusive.

The learned counsel for the relator contends that it is immaterial that certain corporations are, as hereinbefore stated, still subject to taxes in some form which become indirectly a tax upon the shareholders thereof, in addition to the personal income tax to which they are subject for any income derived from the shares, for the reason that it is conclusively shown that there is an unlawful discrimination against the owners of shares of National bank stock under our Tax Law by the fact that a very substantial part of the whole amount of moneyed capital employed as is the capital of National banks, is not represented by the shares of stock of the corporations so taxed, but is in the hands of individual citizens of the State and is subject to no tax except the personal income tax to which the owners thereof are subject, not by virtue of their ownership of the *principal*, but solely for the net income derived from the use thereof. Although the State is not obliged to apply the same system of taxation in taxing National bank shares as that applied to other moneyed capital of individual citizens employed in competition with the capital of such banks (*People ex rel. Bridge-*

46

*port Savings Bank* v. *Feitner,* 191 N. Y. 88, 96; *National Bank* v. *Mayor, etc., of Baltimore,* 100 Fed. Rep. 24; *Amoskeag Savings Bank* v. *Purdy, supra*), it is well settled by the decisions of the Federal court, which are controlling, that there is an unlawful discrimination against the National bank shareholders in violation of the Federal statute, if their shares are subjected to a tax from which *any substantial amount of* other moneyed capital in the hands of individual citizens of the State employed in competition with such banks is exempted, unless such other moneyed capital is subjected, by the State, acting in good faith, to other taxation deemed fair and equitable and designed and calculated to subject it to taxation substantially equal to that to which the shares of the National banks are subjected. (*Merchants' Nat. Bank* v. *Richmond,* 256 U. S. 635; *Boyer* v. *Boyer,* 113 id. 689; *Mercantile Bank* v. *New York,* 121 id. 138; *Amoskeag Savings Bank* v. *Purdy, supra; Van Allen* v. *Assessors,* 3 Wall. 573; *Whitbeck* v. *Mercantile Bank,* 127 U. S. 193; *Covington* v. *First Nat. Bank,* 198 id. 100; *Talbott* v. *Silver Bow County,* 139 id. 438, 447. See, also, *Hepburn* v. *School Directors,* 23 Wall. 480.)

The relator showed that the total assessed value of all shares of State and National banks within the city of New York for the year 1921 was $591,057,307, and that the moneyed capital in the hands of individual citizens employed in competition with the banks, which is exempted by sections 4-a and 352 of the Tax Law from any taxation other than the indirect personal income tax payable by the owners thereof, aggregated upwards of $1,000,000,000; and it was so found by the court on the hearing on the return to the writ, and no exception was filed thereto and no appeal has been taken therefrom. It thus appears that capital nearly twice the aggregate amount of the capital of the State and National banks in the city of New York was employed in competition with them, and was exempted from the one per cent tax imposed upon the book value of the shares of such banks, and from all other taxation with the exception of the personal income tax. The manner in which the capital of the National banks is employed and the extent of other moneyed capital employed in competition therewith is shown by the testimony of Mr. Cable, the cashier of the relator, and of George E. Roberts, a vice-president of the National City Bank, who was formerly the director of the United States Mint. The latter testified that the operations of the National banks in the city of New York consisted in receiving deposits, discounting commercial paper, making loans on collateral security, buying and selling corporate obligations, dealing in acceptances and negotiable securities issued by governments,

states and municipalities and corporations, buying and selling foreign exchange and issuing circulating notes as money; and that in all of these operations, with the exceptions of circulating notes as money, there was competition in the city of New York not only from other banks and trust companies but also from individuals, copartnerships, and other moneyed corporations, and that the principal private banking houses do a banking business substantially similar to that of the National banks; that bond investment houses buy and sell corporate, government, State and municipal corporate obligations and commercial paper; that brokers buy and sell commercial paper of the same character as that bought by the banks; that many private individuals and firms lend money in the market and buy and sell acceptances and other evidences of indebtedness the same as National banks, and that private banking houses receive deposits and pay interest thereon and buy and sell securities in competition with such banks. If the dividends derived from shares of bank and banking association stock were taxable, there could be no doubt, I think, that these facts would show presumptively an unjust and unlawful discrimination against the shareholders of National banks (See *Boyer* v. *Boyer, supra; Merchants' Nat. Bank* v. *Richmond, supra; State of North Dakota ex rel. Farmers' State Bank of Page* v. *Wallace,* —— N. D. ——; 187 N. W. Rep. 728; *Eddy* v. *First National Bank of Fargo,* 275 Fed. Rep. 550), and it is immaterial that there is the same discrimination against the shareholders of State banks. (*Merchants' Nat. Bank* v. *Richmond, supra.*) The burden of proving discrimination was on the relator (*Amoskeag Savings Bank* v. *Purdy, supra*), but if the shares of stock in National banks were subjected to *two* taxes, namely, a tax on valuation and an indirect tax on the income derived from the shares, and if other moneyed capital owned by individual citizens in a very substantial amount and evidently more than twice the aggregate capital of the National banks in the same territory, and employed in competition with such banks, were subjected to only *one* tax, which is the same as *one* of the taxes to which the shares of stock in the National banks are subjected, and depends upon the success of the business in which the capital is employed, and the National bank shares only were subjected to the other tax imposed upon the book value of the shares regardless of income therefrom, and if there be any theory upon which it could be claimed that this would result in no injustice to or wrongful discrimination against National bank shareholders, the burden of meeting the *prima facie* case presented by the relator would be on the respondents; and on that point they have presented no evidence. But, as already

First Department, July, 1922.        [Vol. 202, App. Div.]

observed, I am of opinion that the provisions of the Personal Income Tax Law are to be construed on the assumption that the Legislature recognized that it could not lawfully impose both systems of taxation against such shares, and only one of them against other moneyed capital, and on that theory the phraseology employed, although comprehensive, will be found to be susceptible of a construction that the Legislature did not intend in enacting the Personal Income Tax Law to repeal or to supersede the provisions of section 24-c of the Tax Law exempting such shares from all taxation save the one per cent imposed on the book value thereof by section 24-b. The assessment of the stock in the local rolls and the imposition of a tax on the book value thereof having been authorized by the Federal statute as construed by the courts, as has been seen, the only possible relief which the relator could become entitled to would be to have the tax of one per cent on such book value reduced to conform to the general rate of taxation imposed upon other moneyed capital in the hands of individual citizens employed in competition with the capital of National banks. (*People ex rel. Bridgeport Savings Bank* v. *Feitner,* 191 N. Y. 88; *Merchants' Nat. Bank* v. *Richmond, supra; Amoskeag Savings Bank* v. *Purdy, supra.*) Since the relator has not shown that it is entitled to relief on that theory, or any basis therefor, the order should be affirmed, with ten dollars costs and disbursements.

Clarke, P. J., Dowling, Smith and Page, JJ., concur.

Order affirmed, with ten dollars costs and disbursements.