### NATIONAL ROCKLAND BANK OF BOSTON v. CITY OF BOSTON,
and seventeen other cases.

(District Court, D. Massachusetts. February 20, 1924.)

Nos. 1793, 1794, 1828, 1857, 1859, 1861, 1862, 1888, 1924, 1925, 1927, 1928, 2099, 2100, 2128, 2151, 2169, 2170.

1. **Courts** ⊜➡294—**Federal question held involved in action to recover taxes paid.**

In action by national banks to recover taxes paid under G. L. Mass. c. 63, § 1, *held*, that a federal question was involved, since the legality of the tax imposed by the statute depended on the legality of the statute itself, and that in turn depended on whether the statute contravened the laws of the United States National Banking Act (Rev. St. § 5219 [Comp. St. § 9784]), and the federal court had jurisdiction.

2. **Taxation** ⊜➡10—**National banks cannot be taxed by state, except as allowed by Congress.**

National banks cannot be taxed by the state, except so far as Congress allows them to do it.

3. **Taxation** ⊜➡386(1)—**Method of taxing national bank shares left to states.**

By the terms of the National Banking Act (Rev. St. § 5219 [Comp. St. § 9784]) the method of taxing national bank stock has been left by Congress to the several states.

4. **Taxation** ⊜➡2—**Taxing power necessary to existence, and not controlled by other sovereignty.**

The taxing power of any sovereignty is necessary to its very existence, and cannot be controlled by any other sovereignty.

5. **Taxation** ⊜➡544—**States have right to prescribe reasonable regulations about collection of taxes on national bank shares.**

Since Congress by the National Banking Act (Rev. St. § 5219 [Comp. St. § 9784]), has given the states the right to tax National bank shares, the states have the right to prescribe reasonable regulations about the collection of the tax.

6. **Taxation** ⊜➡11, 543(1)—**State statute as to recovery of taxes paid applies to national banks.**

Illegal tax having been assessed against national bank shares and collected in Massachusetts, the banks have no other remedy than that provided by G. L. Mass. c. 60, § 98, which requires that tax must be paid

---

⊜➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

under protest and suit be brought within three months; this requirement not being so serious an interference with their functions as agencies of the national government as to be unconstitutional, though the illegality of the tax arose by reason of noncompliance with the National Banking Act (Rev. St. § 5219 [Comp. St. § 9784]).

Actions by the National Rockland Bank of Boston (No. 1793) by the National Shawmut Bank (No. 1794), by the Citizens' National Bank (No. 1828), by the People's National Bank (No. 1862), by the Commercial National Bank of Boston (No. 1888), by the Fourth Atlantic National Bank (No. 2099), by the Boylston National Bank of Boston (No. 2100), and by the National Security Bank (No. 2128), respectively, against the City of Boston, by the First National Bank of Marlboro (No. 1925), by the People's National Bank of Marlboro (No. 1928), and by the People's National Bank of Marlborough (No. 2151), respectively, against the City of Marlborough, by the Old Colony National Bank (No. 2169) and by the Plymouth National Bank (No. 2170), respectively, against the Inhabitants of the Town of Plymouth, by the First National Bank of Marlboro (No. 1924) and by the People's National Bank of Marlborough (No. 1927), respectively, against William H. Osgood, by the People's National Bank of Boston against E. V. B. Parke (No. 1857), by the People's National Bank against Thomas W. Murray (No. 1859), and by the People's National Bank against Frank S. Deland (No. 1861). On motions to dismiss and demurrers. Motions overruled, and demurrers sustained.

In Cases Nos. 1793 and 1794:

Gaston, Snow, Saltonstall & Hunt and Thomas Hunt, all of Boston, Mass., for plaintiff.

E. Mark Sullivan, John A. Sullivan, Jay R. Benton, and Wm. Harold Hitchcock, all of Boston, Mass., for defendant.

In Case No. 1828:

Wm. P. Everts, Guy A. Ham, and Ham, Willard & Taylor, all of Boston, Mass., for plaintiff.

E. Mark Sullivan, John A. Sullivan, Jay R. Benton, and Wm. Harold Hitchcock, all of Boston, Mass., for defendant.

In Cases Nos. 1857, 1859, 1861, and 1862:

Wm. P. Everts, of Boston, Mass., for plaintiff.

E. Mark Sullivan, John A. Sullivan, Jay R. Benton, and Wm. Harold Hitchcock, all of Boston, Mass., for defendant.

In Case No. 1888:

Robert P. Clapp, of Boston, Mass., for plaintiff.

John A. Sullivan, Jay R. Benton, and Wm. Harold Hitchcock, all of Boston, Mass., for defendant.

In Cases Nos. 1924 and 1925:

J. J. Shaughnessy, of Marlboro, Mass., for plaintiff.

Winfield Temple, Jay R. Benton, Wm. Harold Hitchcock, and William H. Murphy, all of Boston, Mass., for defendant.

In Cases Nos. 1927 and 1928:

James W. McDonald, of Marlboro, Mass., for plaintiff.

Winfield Temple, Jay R. Benton, Wm. Harold Hitchcock, and William H. Murphy, all of Boston, Mass., for defendant.

In Cases Nos. 2099 and 2100:

Hollis R. Bailey, of Boston, Mass., for plaintiff.

John A. Sullivan, Jay R. Benton, and Wm. Harold Hitchcock, all of Boston, Mass., for defendant.

In Case No. 2128:

Edmund A. Whitman and Elder, Whitman, Weyburn & Crocker, all of Boston, Mass., for plaintiff.

John A. Sullivan, Jay R. Benton, and Wm. Harold Hitchcock, all of Boston, Mass., for defendant.

In Case No. 2151:

James W. McDonald, of Marlboro, Mass., for plaintiff.

Winfield Temple, Jay R. Benton, and Wm. Harold Hitchcock, all of Boston, Mass., for defendant.

In Cases Nos. 2169 and 2170:

Frederick G. Katzman, of Hyde Park, Mass., and John P. Vahey, of Plymouth, Mass., for plaintiff.

Morton Collingwood, Jay R. Benton, and Wm. Harold Hitchcock, all of Boston, Mass., for defendant.

LOWELL, District Judge. On motions to dismiss and demurrers. These are cases of importance, not only on account of the large sums of money at stake, but also because they involve the relation between the state and federal governments. The facts may be shortly stated. In 1916 the Legislature of Massachusetts passed an income tax law, which became effective in 1917. St. 1916, c. 269; G. L. c. 62. Under this system the old method of taxing intangible personal property at its fair cash value was done away with, and a tax was laid on the income only from such property. The method of taxing shares in national banks was, however, left as before; it is from this circumstance that the cases at bar arise.

The National Banking Act provides:

"Nothing herein shall prevent all the shares in any association from being included in the valuation of the personal property of the owner or holder of such shares, in assessing taxes imposed by authority of the state within which the association is located; *but the Legislature of each state may determine and direct the manner and place of taxing all the shares of national banking associations located within the state,* subject only to the two restrictions, that the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state, and that the shares of any national banking association owned by nonresidents of any state shall be taxed in the city or town where the bank is located, and not elsewhere. Nothing herein shall be construed to exempt the real property of associations from either state, county, or municipal taxes, to the same extent, according to its value, as other real property is taxed." R. S. § 5219 (Comp. St. § 9784). (Italics ours.)

Before 1917, shares in national banks were taxed in the same way and at the same rate as other similar property, namely, at the fair cash value. This method of taxing was held to be constitutional. Bank of Redemption v. Boston, 125 U. S. 60, 8 Sup. Ct. 772, 31 L. Ed. 689. Since 1917, however, other moneyed capital has been taxed only on its income, while shares in national banks have continued to be taxed at their fair cash value, as before. The result is that the

tax which must be paid on the shares of national banks is much greater than that paid on other like property. There seems little room for doubt that the taxation which has been imposed by the state on bank shares is obnoxious to the provisions of the National Banking Act, and consequently illegal. Merchants Nat. Bank v. Richmond, 256 U. S. 635, 41 Sup. Ct. 619, 65 L. Ed. 1135.

The real question is whether, the illegal tax having been assessed and collected, the plaintiffs have any other remedy than that provided by the statute of Massachusetts, which requires that a tax must be paid under protest and suit brought within three months. G. L. c. 60, § 98. (The cases at bar were governed by earlier statutes but their provisions were the same as those of the General Laws.)

[1] Motions to dismiss have been filed on the ground that no federal question is involved, and that therefore the District Court has no jurisdiction. It is contended by the defendants that the state statute is not unconstitutional, but has been wrongly interpreted by the taxing officials, and that the interpretation of a state statute presents no Federal question. A glance at the statute will show that this contention is unfounded. The statute provides that the shares "shall be assessed at their fair cash value on April first, after deducting therefrom the proportionate part of the value of the real estate belonging to the bank, at the same rate as other moneyed capital in the hands of citizens is by law assessed." G. L. c. 63, § 1. It appears from the wording of the statute that bank shares must be taxed at their fair cash value, the taxing authorities having no discretion in the matter. The tax imposed was plainly required by the statute; the legality of it depends upon the legality of the statute itself, and that in turn depends upon whether the statute contravenes the laws of the United States. This presents a federal question, and this court has jurisdiction. Osborn v. U. S. Bank, 9 Wheat. 738, 821, 6 L. Ed. 204. The motions to dismiss are overruled.

A more difficult question arises on the demurrers filed by the defendants. Their contention is that the statute of Massachusetts gives a right to recover an illegal tax, that this right is exclusive, and that a national bank which has been illegally taxed' stands on no different footing from any other corporation. The plaintiffs, on the other hand, contend that a state has no power to interfere with an agency of the federal government, and that the exclusive remedy provided by the statute is an unreasonable one, not binding on the banks.

[2] Since the great case of McCulloch v. Maryland, 4 Wheat. 316, 4 L. Ed. 579, it has been the law that the national banks cannot be taxed by the states, except so far as Congress has allowed them to do it.

The fundamental principles underlying these cases have been lucidly stated by Mr. Justice Strong in the Case of the State Freight Tax, 15 Wall. 232, 271 (21 L. Ed. 146), as follows:

"The question is a grave one. It calls upon us to trace the line, always difficult to be traced, between the limits of state sovereignty in imposing taxation, and the power and duty of the federal government to protect and regulate interstate commerce. While, upon the one hand, it is of the utmost importance that the states should possess the power to raise revenue for all

the purposes of a state government, by any means, and in any manner not inconsistent with the powers which the people of the states have conferred upon the general government, it is equally important that the domain of the latter should be preserved free from invasion, and that no state legislation should be sustained which defeats the avowed purposes of the federal Constitution, or which assumes to regulate, or control subjects committed by that Constitution exclusively to the regulation of Congress."

Mr. Justice Field said in Dows v. City of Chicago, 11 Wall. 108, 110 (20 L. Ed. 65):

"It is upon taxation that the several states chiefly rely to obtain the means to carry on their respective governments, and it is of the utmost importance to all of them that the modes adopted to enforce the taxes levied should be interfered with as little as possible. Any delay in the proceedings of the officers, upon whom the duty is devolved of collecting the taxes, may derange the operations of government, and thereby cause serious detriment to the public."

On the one hand, it is essential that the taxing authorities of the state, the cities and towns, should be able to raise the revenue necessary to carry on their affairs without having to wait for years to discover whether part of the money used by them was illegally raised, and therefore recoverable from them. On the other hand, an agency of the national government cannot be so seriously interfered with as to impair its efficiency.

[3] By the terms of the National Banking Act:

"The Legislature of each state may determine and direct the manner and place of taxing all the shares of national banking associations located within the state, subject only to the * * * restrictions that the taxation shall not be at a greater rate. * * *"

The method of taxing shares has therefore been left by Congress to the several states.

[4] When Congress allows the shares of national banks to be taxed, it thereby gives this branch of the taxation of a governmental agency into the charge of the taxing authorities of the state, and the usual incidents of such taxation apply. By the statute relating to taxation of national banks the Congress did not lay down, even if it constitutionally could do so, of which there may be considerable doubt, any method for determination in the various states of the validity of the tax imposed by the states. This impliedly adopted the various state laws relating to the manner of complaint about a tax. There seems to be no reason, when a state has been given the power to tax shares of a national bank, that the bank should be treated any differently than any other person or corporation which the state has power to tax. The taxing power of any sovereignty is necessary to its very existence, and cannot be controlled by any other sovereignty. There is no contention in the present case that the method of testing the constitutionality of a tax is unfair to the national banks, on the ground that it is different from that required of other persons and corporations. A state must be allowed, and in this instance has been allowed, to determine the methods of collection of its own taxes. Any other result would be an unwarranted interference by the national government with the affairs of the state.

[5, 6] The argument of the plaintiffs, while addressed to the reasonableness of the three-months limitation, really goes much further, and depends for its validity on the proposition that a state has no constitutional power to prescribe the method of complaint against a tax on national bank shares. The result of this is that only the ordinary six-year limitation is applicable. The practical outcome would be that no state could for six years be sure of the amount of money which it could use to carry on its governmental functions. Such a result should not be reached unless it is unavoidable. As a practical and, as we have seen, a constitutional matter, the states have the right to prescribe reasonable regulations about the collection of these taxes.

The question in this case must be considered in its relation to conditions existing in Massachusetts—a small, thickly settled state, with every facility for the quick transaction of business, whether by carrier, correspondence through the mails, by telegraph or telephone, or even, in the centers of population, by messenger. A law, though valid for Massachusetts, might be invalid for Texas or Arizona, as the conditions in those states are so different. Mulvey v. Boston, 197 Mass. 178, 83 N. E. 402, 14 Ann. Cas. 349. See, also, Wheatland v. Boston, 202 Mass. 258, 88 N. E. 769; Lever Bros. Co. v. Comm., 232 Mass. 22, 121 N. E. 516, and cases cited. The Supreme Court of the United States has passed on many cases, which are cited in the Lever Case. Though they are not exactly like the case at bar, they are analogous. That court has also held that an act of Congress which allowed three months for an appeal from the ruling of the Secretary of the Treasury, in a customs matter, was reasonable. Arnson v. Murphy, 109 U. S. 238, 3 Sup. Ct. 184, 27 L. Ed. 920. The Circuit Court of Appeals in this circuit has decided that the regulation in the statute under consideration in the case at bar is reasonable as applied to a nonresident individual. Long v. Norman, 289 Fed. 5. See, also, Burrill v. Locomobile Co., 258 U. S. 34, 42 Sup. Ct. 256, 66 L. Ed. 450, and Keokuk Bridge Co. v. Salm, 258 U. S. 122, 42 Sup. Ct. 207, 66 L. Ed. 496.

As is clearly pointed out in the brief filed on behalf of the commonwealth, the banks were not taken by surprise. The reason why such cases as these were not brought before probably is that it never occurred to any of the banks until their attention was called to it by the Richmond Case, decided in 1921. Merchants' Nat. Bank v. Richmond, 256 U. S. 635, 41 Sup. Ct. 619, 65 L. Ed. 1135. But in the years 1917, 1918, 1919, and 1920, when the taxes complained of were laid, the banks had notice of the taxation, beginning on the 1st of April, when they were required to file lists of their shareholders. G. L. c. 59, §§ 22, 29. A tax bill was rendered to them about October 1st, requiring payment on or before November 1st, and they had three months after that in which to bring suit, which they could do, if they had paid under written protest. G. L. c. 60, § 98. They had, therefore, eight months in which to consider the question of paying under protest, and three months after that in which to bring suit. This was an appropriate remedy, as it has been held that a tax collected under an unconstitutional statute may be recovered by an action at law. Wheatland v. Boston, 202 Mass. 258, 88 N. E. 769.

The taxes laid in these cases were partly valid, and the banks might have proceeded by way of abatement, which they could have done within six months after the date of payment. This adds three months more to the time within which they could have complained of the tax, thus bringing the period up to more than a full year. National banks in the past have made use of this provision of the statutes. Nat. Bank of Commerce v. New Bedford, 155 Mass. 313, 29 N. E. 532. And if this provision is binding on them, there seems no reason why the provision relating to a suit to recover back a tax should not also be binding.

The very large sums in the aggregate concerned in these cases make the interference with the banks by the state taxing power seem very serious. We must remember, however, that such large sums have become of moment here only because for four years the banks were quietly slumbering on their rights. A serious constitutional question cannot be determined solely by the neglect of the parties affected to assert their rights.

The decision of the Circuit Court of Appeals in this Circuit in Long v. Norman, already cited, seems to me conclusive on this question. On the whole, I am of the opinion that, considering the vital necessity to the cities and towns of having their revenue fixed and certain, the law of Massachusetts, which gives in terms three months, and in effect nine months or a year, to the national banks to complain of a tax, is not so serious an interference with their functions as agencies of the national government as to be unconstitutional.

The decision already arrived at renders it unnecessary to consider the other questions, which were ably argued at the bar and supported by learned briefs.

Demurrers sustained.