John CHILDS et al., Appellants,

v.

REUNION BANK and Charles N. Brewer, Appellees.

No. 19961.

Court of Civil Appeals of Texas, Dallas.

Aug. 6, 1979.

Rehearing Denied Sept. 10, 1979.

Henry M. Wade, Dist. Atty., Charles Bowling, Jr., Asst. Dist. Atty., Dallas, for appellants.

Before AKIN, ROBERTSON and HUM-PHREYS, JJ.

AKIN, Justice.

This is an appeal by the Tax Assessor-Collector and the Board of Equalization of Dallas County from a permanent injunction commanding them to desist from assessing or collecting 1977 and 1978 ad valorem taxes on the stock of Reunion Bank. The suit was brought by appellee bank as agent for its shareholders and by appellee Charles N. Brewer, a shareholder and president of the bank and representative of a class consisting of all its shareholders. The trial court held that appellants' tax scheme was arbitrary, deliberate, and erroneous, and enjoined its implementation as to these taxpayer-plaintiffs. The tax collector raises four principal contentions on appeal. First, he claims the trial court erred in denying appellants' plea that this suit for injunction was filed too late because the tax plan had already been put into effect. Secondly, he contends the trial court erred in granting the injunction because the taxpayers did not sustain their burden of proof, they did not seek to do equity, and the injunction constituted an improper tax exemption for appellees. Thirdly, the tax collector maintains the trial court erred in denying his request for a jury trial, and lastly, the trial court erred in assessing court costs against him. We overrule the tax collector's contentions and affirm the trial court's judgment.

This is the second suit enjoining the tax collector from collecting ad valorem taxes

under Tex.Rev.Civ.Stat.Ann. art. 7166 (Vernon 1960) on the shares of Reunion Bank. Article 7166 provides as follows:

> Every banking corporation, State or national, doing business in this State shall, in the city or town in which it is located, render its real estate to the tax assessor at the time and in the manner required of individuals. At the time of making such rendition the president or some other officer of said bank shall file with said assessor a sworn statement showing the number and amount of the shares of said bank, the name and residence of each shareholder, and the number and amount of shares owned by him. Every shareholder of said bank shall, in the city or town where said bank is located, render at their actual value to the tax assessor all shares owned by him in such bank; and in case of his failure so to do, the assessor shall assess such unrendered shares as other unrendered property. Each share in such bank shall be taxed only for the difference between its actual cash value and the proportionate amount per share at which its real estate is assessed. The taxes due upon the shares of banking corporations shall be a lien thereon, and no banking corporation shall pay any dividend to any shareholder who is in default in the payment of taxes due on his shares; nor shall any banking corporation permit the transfer upon its books of any share, the owner of which is in default in the payment of his taxes upon the same. Nothing herein shall be so construed as to tax national or State banks, or the shareholders thereof, at a greater rate than is assessed against other moneyed capital in the hands of individuals.

In the first suit the bank successfully enjoined the tax collector from collecting the taxes from the bank. The tax collector then attempted to collect the tax from the individual shareholders, and these taxpayers brought this suit.

The tax collector's first contention is that the trial court erred in failing to hold that the suit was filed too late. He claims that the taxpayers' suit for injunction was not filed until after the county's tax scheme had been certified and a substantial amount of taxes had been collected. He cites *City of Arlington v. Cannon*, 153 Tex. 566, 271 S.W.2d 414, 416–17 (1954), for the proposition that the remedies of mandamus and injunction are lost to a taxpayer challenging a taxing plan if they are not asserted before the taxing authority puts the plan into effect. The *Cannon* court held as follows:

> In the recent case of *State v. Whittenburg* [, Tex.Sup., 265 S.W.2d 569] . . . we recognized the right to relief from such an arbitrary plan of taxation. However, if the taxpayer fails to avail himself of the remedies of mandamus and injunction to prevent a taxing authority from putting such a plan into effect, . . . his right to relief is limited . . . Once such a plan is put into effect the litigant may defeat the recovery of taxes only to the extent that they are excessive and he must assume the burden of proving excessiveness . . . *The difficulties to be encountered in making the necessary proof as a basis for relief is the penalty the taxpayer must pay for sitting idly by while taxing authorities put into effect a plan of taxation which deliberately permits certain classes of property to escape taxation.* 271 S.W.2d at 416–17 [Emphasis added]

We cannot agree that the case here falls within the ambit of the rule enunciated in *Cannon* with respect to appellees' property because the record before us shows that appellees were diligent at all times under the standard set forth in *Cannon*. Under the rationale of *Cannon*, the taxpayer must lack diligence before that rule is applicable. In our case, the shareholders received their tax notices in January 1978. Appellee Charles N. Brewer obtained permission on May 31, 1978, to appear before the Board of Equalization, individually and on behalf of all shareholders, in the Board's first series of meetings in July. At his appearance Brewer presented a position paper explaining the nature of his complaint against the county's tax scheme. The tax scheme had

not yet been certified or implemented. After his appearance, Brewer understood that the Board of Equalization would seek an attorney general's opinion before approving the enrollment of the tax against the bank stock, and would not place the Reunion Bank shares on the taxrolls unless the attorney general so advised. Immediately after Brewer's appearance, he met with the tax collector who agreed not to enroll the Reunion Bank shareholders on the taxrolls until an attorney general's opinion on the legality of the tax scheme was obtained. A second meeting confirming this agreement was held on or about August 15, 1978.

Notwithstanding these assurances, on September 29, 1978, Brewer received a tax statement for ad valorem taxes on the bank shares. This was his first notification since his appearance before the Board of Equalization that the contested tax scheme would be implemented. He immediately directed his attorney to bring this lawsuit, which was filed on October 5, 1978. Although implementation of the tax scheme had already begun at this filing, we hold that the taxpayers' diligence, coupled with their invited reliance on the appellants' representations, takes this case out of the rule announced in *Cannon*. Consequently, these taxpayers still had the remedy of injunction available to them, and they had no burden to show excessiveness in attacking the tax scheme.

 To hold otherwise would place these taxpayers in an unjust dilemma. *See Burklund v. Hackett*, 575 S.W.2d 389, 393 (Tex.Civ.App.—Tyler 1978, no writ). If they had brought suit prior to notification that the taxing authorities were going to proceed with their tax scheme, in other words, during the time when the tax collector's agreement not to proceed with the tax scheme was still in effect, the injunction would have been premature since there was no probability of substantial injury to the taxpayers. The tax collector, however, would have us hold that these taxpayers have waived their injunction remedy by not bringing a premature injunction action. Such a ruling would allow taxing authori-

ties to escape any injunction or mandamus attack on their taxing schemes by promising not to implement the scheme against the complaining taxpayer until such a time as the scheme has already been certified and implemented against other noncomplaining taxpayers. We note that the taxpayers filed suit within a week of notification that the tax scheme was being implemented. In view of the promises by the taxing authorities and the continuing diligence of these taxpayers in challenging this tax scheme, they were not required to do more than is shown in this record to preserve their right to injunctive relief. Where a taxpayer challenges the imposition of taxes upon his property in a direct attack upon a constitutional infirmity and prosecutes his suit with diligence, nothing further is required. *Burklund v. Hackett*, 575 S.W.2d 389, 393 (Tex.Civ.App.—Tyler 1978, no writ); *Atlantic Richfield Co. v. Warren Ind. School Dist.*, 453 S.W.2d 190, 196 (Tex. Civ.App.—Beaumont 1970, writ ref'd n.r.e.). We hold, therefore, that the tax collector's plea in bar was properly denied.

The tax collector's second contention is that the injunction was improper. Specifically, he claims that the taxpayers failed to carry their burden of proof, that they did not seek to do equity, and further, that the injunction constituted an improper tax exemption for these taxpayers. We turn first to the sufficiency of the proof offered by the taxpayers.

 Whether injunctive relief is sought before or after an assessment plan is put into effect, the taxpayers must show that the plan is illegal. They must also show a likelihood of substantial injury; that is, they must show that the plan would discriminate against them by deliberately assessing their property at a greater percentage of its true value than the percentage assessed for other properties subject to the tax. *City of Arlington v. Cannon*, 153 Tex. 566, 271 S.W.2d 414, 417 (1954); *Lancaster Ind. School Dist. v. Pinson*, 510 S.W.2d 380, 383 (Tex.Civ.App.—Dallas 1974, writ ref'd n.r.e.). If the plan wholly excludes some classes of property from the

assessment rolls, injury from such a plan may be shown without establishing the market value of the plaintiffs' property. *Lancaster Ind. School Dist. v. Pinson*, 510 S.W.2d 380, 383 (Tex.Civ.App.—Dallas 1974, writ ref'd n.r.e.). The record shows, by the tax collector's own testimony, that numerous classes of taxable property were wholly and deliberately excluded from the taxrolls. This testimony is sufficient under the above authorities to show that the assessments against these taxpayers were discriminatory and to relieve them of the burden of establishing the market value of their property.

▮ Furthermore, the tax collector's testimony establishes that the taxing scheme is illegal. The last sentence of article 7166 provides that "Nothing herein shall be so construed as to tax national or State banks, *or the shareholders thereof, at a greater rate than is assessed against other moneyed capital in the hands of individuals.*" (Emphasis added). The tax collector testified that no intangible personal property in Dallas County is taxed except for bank stock, and no other moneyed capital in the hands of individuals is taxed. Individuals are not asked to render or pay taxes on any of their moneyed capital other than bank stock or on various types of tangible personal property. A tax scheme that levies against only one type of moneyed capital, bank stock, while not levying against any other moneyed capital in the hands of individuals is in obvious violation of article 7166. We hold, therefore, that the taxpayers sustained their burden to show that the taxing scheme was illegal.

▮ The tax collector also claims that the taxpayers did not show the likelihood of a sufficient substantial injury to entitle them to an injunction. The trial court found that the injury would have been between $2,669.00 and $8,007.00. The tax collector points out that this was the total potential injury to 163 shareholders, and that about 68% of the stockholders faced losses ranging from $6.67 to $20.02. He argues that such small sums were not sufficient injuries to justify the injunction. We cannot agree.

The taxpayers had the burden to show the likelihood of a substantial injury, *Lancaster Ind. School Dist. v. Pinson*, 510 S.W.2d 380, 383 (Tex.Civ.App.—Dallas 1974, writ ref'd n.r.e.), which they sustained by proving that the taxing scheme was discriminatory and that a total injury of between $2,699.00 and $8,007.00 would result. This was sufficient, even in view of the fact that 163 shareholders made up the class of plaintiffs. The tax collector cites no authority to support his position that a class of taxpayers challenging a taxing scheme should not be allowed to aggregate their injuries in order to show the likelihood of a substantial injury. Indeed, a substantial injury is shown, as a matter of law, by appellants' discriminatory taxing scheme. Accordingly, we overrule the tax collector's complaint on this ground and hold that substantial injury has been shown.

▮ The tax collector next argues that the appellees should not be granted an injunction because they failed to do equity in that they did not voluntarily render their personal property for taxing purposes. There is no evidence in the record to support this contention. Furthermore, the tax collector did not raise this point in the trial court and he cannot now raise it for the first time on appeal. *Department of Mental Hygiene v. Bank of the Southwest*, 163 Tex. 314, 354 S.W.2d 576, 581 (1962).

▮ The tax collector's final attack on the injunction is that the injunction granted an illegal exemption from taxation. We disagree. A taxpayer's right to an injunction, when timely filed, against an illegal tax scheme is well-established where the tax scheme is discriminatory and the taxpayer can show that it will cause him a substantial injury. *City of Arlington v. Cannon*, 153 Tex. 566, 271 S.W.2d 414, 416 (1954); *Atlantic Richfield Co. v. Warren Ind. School Dist.*, 543 S.W.2d 190 (Tex.Civ. App.—Beaumont 1970, writ ref'd n.r.e.); *City of Houston v. Baker*, 178 S.W. 820, 824 (Tex.Civ.App.—Galveston 1915, writ ref'd).

▮ The tax collector's third contention attacks the trial court's refusal to

grant his motion for a jury trial. He filed his jury demand seven days before the date of trial. Thus, his request was not made within the ten-day period prior to trial provided by Tex.R.Civ.P. 216. The general rule is that a party has a right to a trial by jury even though the jury fee is paid late, if a jury panel is available, unless it causes a postponement of the trial and unless it causes an undue interference with the handling of other business of the court. *Erback v. Donald*, 170 S.W.2d 289, 294 (Tex. Civ.App.—Fort Worth 1943, writ ref'd w.o. m.). When a demand for a jury fails to comply with Rule 216 in that the fee is paid late, the trial judge has discretion to deny a jury and on appeal the burden is on the appellant to show an abuse of that discretion. *Wooten v. Dallas Fishing and Hunting Club*, 427 S.W.2d 344, 346 (Tex.Civ.App. —Dallas 1968, no writ); *Aronoff v. Texas Turnpike Authority*, 299 S.W.2d 342, 344 (Tex.Civ.App.—Dallas 1957, no writ). Since there is nothing in the record to show any of the circumstances surrounding the denial except that the request was denied and that the motion did not comply with Rule 216, no reversible error is shown. *Aronoff v. Texas Turnpike Authority*, 299 S.W.2d 342, 344 (Tex.Civ.App.—Dallas 1957, no writ); *Lebman v. Sullivan*, 198 S.W.2d 280 (Tex.Civ. App.—San Antonio 1946, writ ref'd n.r.e.).

In his final contention, the tax collector argues that the trial court erred in taxing costs against him. He argues that under article 7297 and section 6 of article 7345b, Tex.Rev.Civ.Stat.Ann. (Vernon 1960), costs may not be assessed against taxing authorities that bring suit to collect delinquent taxes. Ordinarily, in the absence of a statute exempting a governmental unit from the payment of court costs, it is liable just as any other litigant. *Ibanez v. State*, 123 S.W.2d 704 (Tex.Civ.App.—El Paso 1938, no writ); *Reed v. State*, 78 S.W.2d 254, 257 (Tex.Civ.App.—Austin 1934, writ dism'd). The statutes urged here by appellants are not applicable to this suit, which is a suit brought by taxpayers to enjoin collection of an illegal tax. Consequently, the trial judge did not err in assessing costs against the tax collector. *City of Amarillo v. Paramount Terrace Christian Church*, 530 S.W.2d 323, 324 (Tex.Civ.App. —Amarillo 1975, writ ref'd n.r.e.); *Glass v. Great Southern Life Insur. Co.*, 170 S.W.2d 247 (Tex.Civ.App.—Galveston 1943, writ ref'd w.o.m.).

Affirmed.