BANK OF TEXAS et al., Appellants,

v.

John CHILDS et al., Appellees.

No. 20660.

Court of Civil Appeals of Texas, Dallas.

Jan. 23, 1981.

Rehearing Denied May 1, 1981.

Peter S. Chantilis, Cecilia S. Hufstedler, Dallas, for appellants.

Earl Luna, Randel B. Gibbs, Dallas, for appellees.

Before GUITTARD, C. J., and AKIN and ROBERTSON, JJ.

GUITTARD, Chief Justice.

### ON MOTIONS FOR REHEARING

The principal question in this case is the validity of the tax on bank shares assessed by Dallas County under article 7150.6 and 7166 of the Texas Revised Civil Statutes.[1] The suit was brought by the Bank of Texas, a state banking corporation, and all its shareholders, against the county, its tax assessor-collector, and board of equalization, for mandamus, injunction, and declaratory relief, alleging that the county's tax plan of 1979 is illegal under state law, or if not

---

1. These articles were repealed by Section 6(a)(1) of the Property Tax Code, effective Jan- uary 1, 1982. Tex.Laws 1979, ch. 841, at 2329.

illegal, unlawfully discriminates against holders of bank shares because no such tax is assessed against other intangible property including other moneyed capital in the hands of individuals. The bank and its shareholders further contend that the assessment is illegal under federal law because it considers the value of obligations of the United States held by the bank in computing the tax, contrary to the federal statute exempting such obligations from taxation.

After a trial without a jury, the trial court upheld the tax and denied the relief sought. We affirm.

### State Law

We consider first the contention that the county has no authority to tax shares of bank stock because article 7150.6, which exempts most intangible property from taxation, has the effect of repealing the tax on bank shares imposed by article 7166. Since article 7166 is not expressly repealed, we must examine the two statutes to determine whether the legislature intended to impliedly repeal the tax on bank shares. We conclude that no such repeal was intended by the legislature.

Article 7166 is as follows:

Every banking corporation, State or national, doing business in this State shall, in the city or town in which it is located, render its real estate to the tax assessor at the time and in the manner required of individuals. At the time of making such rendition the president or some other officer of said bank shall file with said assessor a sworn statement showing the number and amount of the shares of said bank, the name and residence of each shareholder, and the number and amount of shares owned by him. Every shareholder of said bank shall, in the city or town where said bank is located, render at their actual value to the tax assessor all shares owned by him in such bank; and in case of his failure so to do, the assessor shall assess such unrendered shares as other unrendered property. Each share in such bank shall be taxed

only for the difference between its actual cash value and the proportionate amount per share at which its real estate is assessed. The taxes due upon the shares of banking corporations shall be a lien thereon, and no banking corporation shall pay any dividend to any shareholder who is in default in the payment of taxes due on his shares; nor shall any banking corporation permit the transfer upon its books of any share, the owner of which is in default in the payment of his taxes upon the same. Nothing herein shall be so construed as to tax national or State banks, or the shareholders thereof, at a greater rate than is assessed against other moneyed capital in the hands of individuals. Tex.Rev.Civ.Stat.Ann. art. 7166 (Vernon 1960).

The pertinent provisions of article 7150.6 are as follows:

(a) Except as provided by Subsection (b) of this article, intangible property is exempt from ad valorem taxation.

(b) Intangible property is taxable ad valorem if its taxation is provided for by Article 7105, 7165, 7166, or 7244, Revised Civil Statutes of Texas, 1925, as amended; by Section 11.09, Texas Savings and Loan Act (Article 852a, Vernon's Texas Civil Statutes) .... Tex.Rev.Civ.Stat. Ann. art. 7150.6 (Vernon Supp. 1980).

The bank and its shareholders contend that since article 7166 provides that bank shares may not be taxed at a greater rate than other moneyed capital in the hands of individuals, and article 7150.6 expressly exempts such other moneyed capital from taxation, 7166 no longer imposes a tax on bank shares. They acknowledged in oral argument that this contention means that article 7166 has been repealed by implication.

We do not agree that article 7166 was repealed by article 7150.6. Since repeals by implication are not favored, old and new statutes that are not positively repugnant will each be construed so as to give effect to both, if possible. *Standard v. Sadler*, 383 S.W.2d 391, 395 (Tex.1964). We have no difficulty in construing these two

statutes so as to give effect to both. In fact, article 7166 falls within an express exception to the exemption of intangible property from taxation provided by article 7150.6(a). It would be clearly contrary to the legislative intent to hold that an earlier statute expressly specified in an exception to the later statute is repealed by the later statute.

The only provision of article 7166 that is arguably repealed by article 7150.6 is the last sentence of article 7166, which provides:

> Nothing herein shall be so construed as to tax national or State banks, or the shareholders thereof, at a greater rate than is assessed against all other moneyed capital in the hands of individuals.

■ If the intent of article 7150.6 is to repeal all taxes on "other moneyed capital in the hands of individuals" but to retain the tax on bank shares, as the reference to article 7166 in subsection (b) of article 7150.6 indicates, then the last sentence of article 7166 above quoted may no longer be effective. This interpretation is preferable to ascribing to the legislature the intent to repeal article 7166 in its entirety because of the express exclusion of the bank shares tax in article 7150.6(b). Moreover, repeal of only the last sentence would be supported by the rule that when two statutes have conflicting provisions, the earlier statute will be held to be repealed only to the extent of the conflict, and otherwise will be construed as remaining in effect. *Whittenberg v. Craven*, 258 S.W. 152, 153 (Tex.Com. App. 1924, judgmt adopted); *Texas State Board of Pharmacy v. Kittman*, 550 S.W.2d 104, 107 (Tex.Civ.App.—Tyler 1977, no writ); *Parker v. State*, 208 S.W.2d 380, 383–84 (Tex.Civ.App.), aff'd 147 Tex. 57, 212 S.W.2d 132 (1948). Consequently, rather than construe article 7150.6 as repealing

article 7166 in its entirety, we would be required to construe it as repealing only the last sentence.[2]

■ However, it may not be necessary to go so far as to hold that the last sentence of article 7166 has been repealed by article 7150.6. Subdivision (b) of article 7150.6 enumerates several statutes in addition to article 7166 that are excluded from the exemption of intangible property from taxation. We need not determine whether any of these other statutes impose a tax on "moneyed capital in the hands of individuals." There is no contention here that any of them does impose such a tax, but if any of them do, the last sentence of article 7166 may still be effective to forbid the taxation of bank shares at a greater rate than the tax imposed by any of those statutes. If none of them imposes such a tax, then the last sentence may have no effect until and unless legislation is enacted imposing such a tax.

■ Furthermore, we note that there is no evidence in the present record that there is, in Dallas County or elsewhere, any "other moneyed capital in the hands of individuals" that is exempt from taxation under article 7150.6. Consequently, there is no evidence the tax plan of Dallas County is illegal on the ground that the bank shares in question are taxed at a greater rate than "other moneyed capital in the hands of individuals."

For the reasons stated, we hold that when article 7150.6 and article 7166 are read together, and effect is given to both to the extent possible, a tax is still imposed on bank shares. Our holding in this respect is not contrary to *Childs v. Reunion Bank*, 587 S.W.2d 466, 470 (Tex.Civ.App.—Dallas 1979, writ ref'd n. r. e.). That case concerned taxes assessed before the exemption provided by article 7150.6 became effective, and

---

**2.** That construction would be reasonable in view of the fact that the provision forbidding taxing bank stock at a greater rate than "other moneyed capital in the hands of individuals," was apparently taken from section 5219 of the Revised Statutes of the United States, which *authorized state taxation of shares of national banks, but not at a greater rate than "other*

*moneyed capital in the hands of individual citizens of such State."* Since the federal statute has now been amended to provide that a national bank shall be treated the same as a state bank for purposes of state taxation, 12 U.S.C. § 548 (1976), it is reasonable to suppose that *the corresponding limitation in article 7166 is no longer necessary.*

this court held that since the record showed that numerous classes of taxable property, including other moneyed capital in the hands of individuals, were subject to taxation, but were not included in the tax rolls, the assessment on bank shares was in violation of article 7166. That holding cannot control this case because of the provisions of article 7150.6, which, as already explained, by its express reference to article 7166, excludes bank shares from the exemption of intangible property, and, consequently, would have the effect of repealing only the last sentence of article 7166, if that sentence would otherwise extend the exemption to bank shares.

### Inequality of Taxation

■ The bank and its stockholders contend further that if a tax is imposed on bank shares by articles 7150.6 and 7166, these statutes are unconstitutional because they deliberately omit taxation of shares of non-banking corporations and most intangible personal property, contrary to article VIII, section 1, of the Texas Constitution, which provides, "Taxation shall be equal and uniform" The county responds that under article VIII, section 1, as amended effective January 1, 1979, taxation of intangible property is permitted, but not required. We agree with the county's interpretation. Formerly, this section provided, "All property in this State ... shall be taxed in proportion to its value ...." As amended, it provides, "All real property and tangible personal property in this State ... shall be taxed in proportion to its value ...." The amendment adds further that the legislature "may provide for the taxation of intangible property." We interpret the amendment to mean that the legislature may tax intangible property or exempt it, or tax certain classes of intangible property and exempt others.

We recognize that section 1 as amended still provides, "Taxation shall be equal and uniform." With respect to intangible property, this requirement applies only to property which the legislature decides to tax, and permits reasonable classification for

tax purposes, so long as the taxes are equal and uniform within each class. *See Hurt v. Cooper*, 130 Tex. 433, 110 S.W.2d 896, 900–01 (1937); *Grayson County State Bank v. Calvert*, 357 S.W.2d 160, 162 (Tex.Civ.App.—Austin 1962, writ ref'd n. r. e.).

■ The further contention is made, however, that articles 7150.6 and 7166 deny equal protection of the laws, and, therefore, also offend the equal protection clause of the Fourteenth Amendment to the Constitution of the United States because no shares of other corporations are so taxed. This contention raises the question of reasonable classification. The authorities recognize that the states have a wide leeway in making classifications which, in their judgment, produce reasonable systems of taxation. *Kahn v. Shevin*, 416 U.S. 351, 355, 94 S.Ct. 1734, 1737, 40 L.Ed.2d 189 (1974). Accordingly, a state tax law that discriminates in favor of a certain class is not arbitrary if the discrimination is founded upon a reasonable distinction or difference in state policy. *Id.* (tax exemption of widows not applying to widowers upheld).

■ We conclude that bank shares form a class of stock that, for tax purposes, may reasonably be distinguished from other intangible property, including other shares of stock. Banks enjoy powers and privileges not granted to other corporations. As the county points out, other corporations are subject to franchise taxes, which are not imposed on banks. Based on these differences, we cannot say that the legislature has singled out bank shares for arbitrary and unreasonable discrimination.

This conclusion is supported by *Union Bank & Trust Co. v. Phelps*, 288 U.S. 181, 53 S.Ct. 321, 77 L.Ed. 687 (1933), in which it was contended that a tax on state banks denied equal protection because it was not also imposed on other corporations competing with banks. The court held:

> We cannot say that the state Legislature exceeded its power to make reasonable classification when it directed that moneyed capital or the property and shares of building and loan associations, industrial loan corporations, industrial banks, mort-

gage companies, etc., should be exempt from ad valorem taxation or taxed on a different basis from the one prescribed for banks accepting deposits and doing a general commercial business, notwithstanding actual competition between them.

Mere competition between them is not enough to show two concerns must be burdened alike. The state Legislature reasonably might have determined that there was fair ground for distinction; and upon the record we may not hold that its action was arbitrary, capricious, or wholly unreasonable. *Id.* at 185–86, 53 S.Ct. at 321–322.

■■■ In the present case it is also suggested that no valid discrimination can rest on the difference between banks and other corporations without repudiating the distinction between a tax on bank assets and on bank shares. The county relies on this distinction, established in *Van Allen v. The Assessors*, 70 U.S. (3 Wall.) 573, 18 L.Ed. 229 (1866), to avoid application of the exemption of federal securities held by the bank in assessing the tax on the shares. The *Van Allen* rule will be discussed in the next section of this opinion. At this point we need observe only that we cannot accept the view that even though there may be valid grounds to distinguish between banks and other corporations, bank shareholders must be treated like all other shareholders for purposes of taxation. This is a question of equal protection rather than one of determining what property Congress has exempted from state taxation or has permitted the state to tax, such as that before the Supreme Court in *Van Allen*. If a state decides to give more favorable tax treatment to shareholders in corporations that pay franchise taxes than to shareholders in corporations that do not pay such taxes, such a classification cannot be regarded as arbitrary or unreasonable, and, therefore, the constitutional principle of equality is not offended. Consequently, we hold that the tax imposed on bank shares by articles 7150.6 and 7166 is valid and constitutional.

### Exemption of Federal Securities

Another ground alleged as establishing invalidity of the county's plan for taxing bank shares is its failure to deduct the value of the federal securities held by the bank from the bank's net assets before apportioning their value pro rata in determining the value of the shares. Article 7166 provides that the real estate owned by the bank shall be separately rendered and assessed, and that all shares shall be rendered at their actual cash value, but that each share shall be assessed only for the difference between the actual cash value and the proportionate amount per share at which its real estate is assessed. No provision is made for a similar deduction with respect to the federal securities held by the bank.

The evidence shows that the assessed value of the shares for 1979 was determined by book value rather than market value, that is, by subtracting the bank's liabilities from its total assets, deducting the assessed value of its real estate, and dividing that net figure by the number of shares to determine the taxable value per share. There is also evidence showing that if all obligations of the United States held by the bank were deducted from the value of the net assets, nothing would remain to be divided proportionately among the shareholders. The bank and its shareholders contend that this method of assessment is illegal under section 3701 of the Revised Statutes of the United States, 31 U.S.C. § 742 (1976), which provides as follows:

> Except as otherwise provided by law, all stocks, bonds, Treasury notes, and other obligations of the United States, shall be exempt from taxation by or under State or municipal or local authority. This exemption extends to every form of taxation that would require that either the obligations or the interest thereon, or both, be considered, directly or indirectly, in the computation of the tax, except nondiscriminatory franchise or other nonproperty taxes in lieu thereof imposed on corporations and except estate taxes or inheritance taxes.

The first sentence of this statute was enacted originally in 1862.[3] The second sentence was added by amendment in 1959.[4] Before the amendment, state taxation of bank shares without allowing any deduction for federal securities was upheld by a well-established line of decisions by the Supreme Court of the United States, beginning with *Van Allen v. The Assessors,* 70 U.S. (3 Wall.) 573, 18 L.Ed. 229 (1866). The bank and its shareholders insist that the 1959 amendment to section 3701 changed the rule established by those decisions because the amendment extended the exemption to "every form of taxation that would require that either the obligations or the interest thereon, or both, be considered directly or indirectly in the computation of the tax," with exceptions not applicable to the present case. They rely on *Montana Bankers Ass'n v. Montana Department of Revenue,* Mont., 580 P.2d 909 (1978), which held that the 1959 amendment is unambiguous and by its plain language precludes the assessment of a tax on bank shares that requires obligations of the United States to be considered directly or indirectly in the computation of the tax.

▮▮ Although we originally reached the same conclusion as the Montana court, further examination of section 3701 in the light of the decisions of the Supreme Court has persuaded us that the Montana decision is unsound because it ignores the opening words of the statute, "Except as otherwise provided by law," and also ignores another statute, section 5219 of the Revised Statutes of the United States,[5] which falls within this exception. As we shall show in the discussion following, section 5219, upon

which the *Van Allen* rule is based, expressly consents to local taxation of national banks, and, by implication, also consents to taxation of shares in state banks. It has been construed in *Van Allen* and the cases following it to extend this consent to the full interest of the shareholder in shares in both national and state banks, even though the tax is measured by the bank's capital without any deduction of federal securities held by the bank. When we read the exemption statute, section 3701 as amended in 1959, together with the consent statute, section 5219, it appears to us that Congress did not intend by the amendment to withdraw in any respect its consent to state taxation of national or state bank shares.

Consideration of this question must begin with the *Van Allen* opinion itself. The main question in that case was whether the state of New York had the power to tax the shares of national banks whose capital was wholly invested in obligations of the federal government. Counsel contended that the shares were exempt, citing the exemption statute (later codified as section 3701 of the Revised Statutes of the United States) and also the federal government's power to borrow money, as conferred by article I, section 8 of the Constitution of the United States. The opinion of the Supreme Court does not expressly refer to either the statute or to this provision of the Constitution, but evidently considered the question in the light of both. The Court does discuss at length and quotes from the consent statute a provision of the National Bank Act of June 3, 1864, ch. 106, § 41, 13 Stat. 99, 111–112, which then provided that the shares of national banks should be subject

**3.** Act of Feb. 25, 1862, ch. 33, § 2, 12 Stat. 346.

**4.** Pub.L.No.86–346, § 105(a), 73 Stat. 622 (1959).

**5.** Section 5219 was originally included in the National Bank Act of June 3, 1864, ch. 106, § 41, 13 Stat. 99, 111–112, and was later codified as section 5219 of the revised statutes. It was also embodied in 12 U.S.C. § 548 (1964). It was amended in 1969 to provide simply that for the purpose of any federal or state tax law, a national bank "shall be treated as a bank organized and existing under the laws of the

State or other jurisdiction within which its principal office is located." 12 U.S.C. § 548 (1976). We refer in this opinion to section 5219 as it existed in 1959, when section 3701 was amended, because our primary question turns on the meaning of section 3701. The 1969 amendment is evidently intended to broaden rather than restrict congressional consent to state taxation of national banks. *See* S.Rep.No.91–530, 91st Cong., 1st Sess. (1969), reprinted in [1969] U.S.Code Cong. & Ad.News 1594.

to taxation by state authority, "but not at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such State," and providing further that such a tax "shall not exceed the rate imposed upon the shares of any of the banks organized under the authority of the State." 70 U.S. (3 Wall.) at 581, 18 L.Ed. at 233.

The Supreme Court first considered the question of whether the tax was invalid because no similar tax was levied on the shares of state banks. The Court pointed out that the New York statute levied a tax on the capital of state banks, but since their capital might also be invested in federal securities, which were exempt from taxation, such a tax was not equivalent to a tax on the stockholders, such as that assessed against the stockholders of national banks. Consequently, the tax was held to be invalid under that section of the consent statute providing that taxes imposed on national banks should not exceed the rate imposed on the shares in state banks.

The Court went on to say, however, that since this defect might be remedied by the state legislature, (presumably by imposing a similar tax on shares in state banks), it would consider the main question of the power of the state to authorize the taxation of the shares of national banks whose capital was wholly invested in obligations of the federal government. In deciding this question, the Court again relied on the provisions of the National Bank Act and its express consent to state taxation of such shares, and held that such a tax was valid on the ground that the Congress, in authorizing the organization of national banks, could attach conditions to the exercise of the privileges conferred, including the subjection of such shares to state taxation. This appears to be the primary ground of the opinion. As an additional ground, the Court held that the tax on the shares was not a tax on the capital of the bank because of the shareholders' separate ownership of the shares. In discussing this ground, the Court again relied on the National Bank Act, including the provision consenting to state taxation of national bank shares, say-

ing that although Congress, by reason of its paramount authority, could exclude the states from such taxation, it could also withhold the exercise of that authority and leave the states free to act.

The *Van Allen* opinion bears directly on the question of whether the consent statute permits the state's taxing power to apply only to that portion of the shareholder's interest in the bank's capital that was not invested in obligations of the federal government. After a detailed analysis of the National Bank Act, the Court concluded that Congress had intended to make the entire interest of the shareholders subject to taxation, and observed that such a limitation on the meaning of the term "shares" would be "so grave and important a change in the use of the term that, if so intended, would not have been left to judicial construction." 70 U.S. (3 Wall.) at 588, 18 L.Ed. at 236.

The *Van Allen* decision has been repeatedly reaffirmed and regarded as "settled law" by the Supreme Court. *See, e. g., People v. Commissioners of Texas*, 71 U.S. (4 Wall.) 244, 18 L.Ed. 344 (1867); *Des Moines Nat'l Bank v. Fairweather*, 263 U.S. 103, 112–114, 44 S.Ct. 23, 26–27, 68 L.Ed. 101 (1923); *Society for Savings in the City of Cleveland v. Bowers*, 349 U.S. 143, 147, 75 S.Ct. 607, 609, 99 L.Ed. 950 (1955). In *Bowers* the Court characterized section 3701 as a legislative expression of the constitutional principle of the exemption of federal securities from state and local taxation, derived from the power of the federal government to borrow money conferred by article I, section 8, of the Constitution of the United States, and from the Supremacy Clause, article VI, clause 2.

The *Van Allen* rule was extended to shares in state banks in *Cleveland Trust Co. v. Lander*, 184 U.S. 111, 22 S.Ct. 394, 46 L.Ed. 456 (1902). In that case a trust company organized under the laws of Ohio argued that the state tax on its shares should be computed by deducting from its capital certain federal securities because of the exemption provided by section 3701 of the

Revised Statutes of the United States. The Supreme Court observed that this argument claimed a greater immunity for the shares in the trust company than section 5219 provided for shares in national banks. In response to the argument that the laws of Congress governing taxation of national bank shares were immaterial to the power of the state to tax state bank shares, the Court held:

> The contention destroys the separate individuality recognized, as we have seen, by this court, of the trust company and its shareholders, and seeks to nullify one provision of the Revised Statutes of the United States (§ 5219) by another (§ 3701), between which there is no want of harmony. *Id.* at 115, 22 S.Ct. at 396.

As we understand the *Lander* opinion, it holds that section 5219, which by its terms consents to state taxation of national bank shares, also extends to state bank shares, and that any contrary interpretation of the exemption statute, section 3701, would bring it into conflict with section 5219. This conclusion logically follows from the *Van Allen* holding that the New York state tax on national bank shares was invalid because it imposed no equivalent tax on state bank shares. Of course, no federal consent was required for state taxation of the shares of state banks, as distinguished from national banks, except to the extent that state bank shares would otherwise have been exempt under section 3701 because of federal securities held by the bank. Consequently, the only pertinency of section 5219 to the *Lander* case was its effect on the exemption otherwise provided by section 3701. In other words, the Court held that in order to avoid more favorable treatment of state banks than national banks, the consent provided by section 5219 for state taxation of national bank shares, regardless of federal securities held by the bank, must apply also to state taxation of state bank shares.

These decisions demonstrate that before the 1959 amendment to section 3701, the state's authority to impose taxes on the shares of both state and national banks, valued according to the bank's assets without deducting federal securities, rested on the congressional consent provided by section 5219 as well as on the distinction between ownership of bank shares and bank assets. Therefore, we must take into consideration the language and purpose of both section 3701 and section 5219 in assessing the validity of the argument that the amendment to section 3701 changed the *Van Allen* rule. *Kokoszka v. Belford*, 417 U.S. 642, 650, 94 S.Ct. 2431, 2436, 41 L.Ed.2d 374 (1974). When the two statutes are read together, we find no irreconcilable conflict between the two. There can be no conflict in view of the initial words of section 3701, "Except as otherwise provided by law," which remained in the statute as before the amendment. This express exception obviates any difficulty that might otherwise exist in reconciling the provisions of section 5219 with the 1959 amendment to section 3701. The consent provided by section 5219 is "otherwise provided by law," and, therefore, falls within the exception to the exemption.

The original exception in section 3701 is not repealed or modified by the 1959 amendment, although other exceptions, not "otherwise provided by law," were added. One of these exceptions applies to corporate franchise taxes. Before the amendment, the exemption had been held not to apply to a tax imposed on a corporate franchise for the privilege of doing business in corporate form, though the tax was based on corporate assets (or income) without deducting federal securities (or the interest therefrom). *Educational Films Corp. v. Ward*, 282 U.S. 379, 51 S.Ct. 170, 75 L.Ed. 400 (1981); *Home Ins. Co. v. New York*, 134 U.S. 594, 10 S.Ct. 593, 33 L.Ed. 1025 (1890). There was some inconsistency in the decisions on this point, however. *See Macallen Co. v. Massachusetts*, 279 U.S. 620, 49 S.Ct. 432, 73 L.Ed. 874 (1929); Comment, *Share Tax, Franchise Tax and Federal Banks— the Schuylkill Trust Co. Case*, 84 Pa.L.Rev. 758, 764–66 (1936). The 1959 amendment to section 3701 cleared up this inconsistency by providing a specific exception for "nondiscriminatory franchise or other nonproperty

taxes in lieu thereof imposed on corporations." It also provided a specific exception for estate and inheritance taxes, which, by similar reasoning, are imposed on the privilege of succession rather than on the property passing. *See West v. Oklahoma Tax Commission*, 334 U.S. 717, 727, 68 S.Ct. 1223, 1228, 92 L.Ed. 1676 (1948); *Billings v. Illinois*, 188 U.S. 97, 23 S.Ct. 272, 47 L.Ed. 400 (1903); *Cahn v. Calvert*, 159 Tex. 385, 321 S.W.2d 869, 872 (1959). In neither case, however, had such an exception been established on the basis of another federal statute, as in the case of bank shares, and consequently, such taxes were not clearly embraced within the express exception provided by the original exemption statute. There was no need to add another specific exception for taxes on bank shares because that subject was "otherwise provided by law," within the original exception, which is clearly broad enough to cover such taxes which respect to national bank shares.

■ If the 1959 amendment does not withdraw congressional consent to the taxation of national bank shares in view of the express consent still provided by section 5219, neither can it reasonably be construed as negating the implication of congressional consent to the taxation of shares in state banks established in *Lander*. The clear intent of section 5219 is to prohibit more favorable treatment of state banks than of national banks. *See Montana Nat'l Bank v. Yellowstone County*, 276 U.S. 499, 504, 48 S.Ct. 331, 333, 72 L.Ed. 673 (1928); *Merchants' Nat'l Bank v. City of Richmond*, 256 U.S. 635, 638–40, 41 S.Ct. 619, 620–621, 65 L.Ed. 1135 (1921); *Mercantile Nat'l Bank v. New York*, 121 U.S. 138, 78 S.Ct. 826, 30 L.Ed. 895 (1887). Consequently, state taxation of state bank shares, as well as of national bank shares, falls within the original exception to the exemption provided by section 3701.

■ The same conclusion follows without consideration of the express exception. In the absence of that exception, it might be contended that there is a conflict between the 1959 amendment and the provisions of section 5219 consenting to state taxation of bank shares. Such an apparent conflict, however, would not render section 5219 ineffective because of the well-known principle that repeals by implication are not favored. This principle applies to federal statutes as well as state statutes, so that when acts of Congress are in apparent conflict, it is the duty of the courts to regard each as effective in the absence of a clearly expressed congressional intent to the contrary. *Blanchette v. Connecticut General Ins. Corp.*, 419 U.S. 102, 133–34, 95 S.Ct. 335, 353–354, 42 L.Ed.2d 320 (1974); *Morton v. Mancari*, 417 U.S. 535, 548, 94 S.Ct. 2474, 2481, 41 L.Ed.2d 290 (1974). On this principle both section 5219 and the 1959 amendment can be given effect by construing section 5219 as a specific statute with respect to state taxation of bank shares and, therefore, as prevailing as against the more general exemption of federal securities provided by section 3701. This construction is in accordance with the rule that a more specific statute will be given precedence over a more general one, regardless of their temporal sequence. *Busic v. United States*, 446 U.S. 398, 100 S.Ct. 1747, 1753, 64 L.Ed.2d 381 (1980); *Morton v. Mancari*, *supra; Bulova Watch Co. v. United States*, 365 U.S. 753, 758, 81 S.Ct. 864, 867, 6 L.Ed.2d 72 (1961). The effect of regarding the more specific statute as controlling is to interpret the provisions of the specific statute as an exception to the general statute. *Sam Bassett Lumber Co. v. City of Houston*, 145 Tex. 492, 198 S.W.2d 879, 881 (1947); *Sheffield v. State*, 165 Tex.Cr.R. 354, 307 S.W.2d 100, 104 (1957); *Hallum v. Texas Liquor Control Board*, 166 S.W.2d 175, 177 (Tex.Civ.App.—Dallas 1942, writ ref'd).

The theory underlying this rule is explained in *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 155–56, 96 S.Ct. 1989, 1993–1994, 48 L.Ed.2d 540 (1976), which involved a question similar to that now before us. A national bank was sued for violation of the Securities Exchange Act, which provided that suit may be brought in any district where the violation occurred. The bank contended that venue of the suit was

governed by a provision of the earlier National Bank Act, which provided that suit against a national bank "may be brought in the district in which such association may be established." The Supreme Court agreed that the earlier statute was controlling and that its more specific venue provision applying to national banks was not repealed by implication. The opinion of Justice Stewart states principles directly applicable to the present case:

> It is a basic principle of statutory construction that a statute dealing with a narrow, precise, and specific subject is not submerged by a later enacted statute covering a more generalized spectrum. 'Where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment.' *Morton v. Mancari*, 417 U.S. 535, 550–51, 94 S.Ct. 2474, 2482, 41 L.Ed.2d 290, 301. 'The reason and philosophy of the rule is, that when the mind of the legislator has been turned to the details of a subject, and he has acted upon it, a subsequent statute in general terms, or treating the subject in a general manner, and not expressly contradicting the original act, shall not be considered as intended to affect the more particular or positive previous provisions, unless it is absolutely necessary to give the latter act such a construction, in order that its words shall have any meaning at all.' T. Sedgwick, The Interpretation and Construction of Statutory and Constitutional Law 98 (2d ed. 1874). 426 U.S. at 153, 96 S.Ct. at 1992.

The Court went on to say that when Congress enacted the National Bank Act, it was focusing on the particular problems of suits against banks, but that when it enacted the general provisions of the Securities Exchange Act, seventy years later, its focus was on the "broad universe of potential defendants subject to that Act." Consequently, under the principle of statutory construction previously stated, the Court held that in the absence of a "clear intention otherwise," the specific venue provision of the earlier National Bank Act controlled. *Id.* at 154, 96 S.Ct. at 1993.

By similar reasoning in the present case, it is apparent that when Congress enacted section 5219, it was focusing on the particular question of the taxation of bank shares, but when it amended section 3701 in 1959, its focus was on the general exemptions of federal securities, including both principal and interest, from state and local taxation. Since there is no clear intention manifested by the amendment to extend the exemption to bank shares to the extent of the bank's holdings of federal securities, the apparent intention was to leave unimpaired the consent to such taxation provided by section 5219.

This conclusion is confirmed by the legislative history of the 1959 amendment, which, though not the controlling evidence of legislative intent, indicates that the purpose of the Congress was to clarify and codify existing interpretations of the exemption rather than to abolish the distinction between a tax on bank shares and a tax on securities held by the bank. The Supreme Court has frequently resorted to committee reports and other legislative history to determine the purpose of statutes which, on their face, appeared no more doubtful than the statute now before us. *See, e. g., United Steelworkers v. Weber*, 443 U.S. 193, 201, 99 S.Ct. 2721, 2726, 61 L.Ed.2d 480 (1979); *Muniz v. Hoffman*, 422 U.S. 454, 469, 95 S.Ct. 2178, 2186, 45 L.Ed.2d 319 (1975); *United Housing Foundation v. Forman*, 421 U.S. 837, 849, 95 S.Ct. 2051, 2059, 44 L.Ed.2d 621 (1975); *Philbrook v. Glodgett*, 421 U.S. 707, 714, 95 S.Ct. 1893, 1898, 44 L.Ed.2d 525 (1975); *United States v. American Trucking Ass'n*, 310 U.S. 534, 543–44, 60 S.Ct. 1059, 1063–1064, 84 L.Ed. 1345 (1940).

The legislative history of the 1959 amendment to article 3701 strongly indicates that Congress had no intention to withdraw the consent to state taxation of bank shares provided by section 5219. The amendment was included as section 105 in a bill designated as H.R. 9035, 86th Cong., 1st Sess. (1959), which raised the ceiling on the interest rates on series E and H United States

Savings Bonds and made changes in other aspects of debt management. The House Committee on Ways and Means and the Senate Committee on Finance made identical reports to their respective houses concerning H.R. 9035. H.R.Rep.No.1148, 86th Cong., 1st Sess. (1959), S.Rep.No.909, 86th Cong., 1st Sess. (1959), reprinted in [1959] U.S.Code Cong. & Ad.News 2769. In these reports the "Summary of Bill" contains the following statement:

> Fourth, the bill makes it clear that both the principal and interest on U. S. obligations are exempt from all State taxes except nondiscriminatory franchise, etc., taxes. *Id.*

No further reference to section 105 appears in the summary. The "General Statement" included in both of these reports contains the following:

> Present law provides that obligations of the United States are to be exempt from taxation by or under State or local authority. *The Supreme Court has held that this includes the exemption of interest on U. S. obligations from taxation by or under State or local authority. It has been pointed out to your committee, however, that one State has taken the position that the statute as now worded does not prohibit a State from including interest on Federal obligations in computing "gross income" upon which taxable net income is determined. The bill (sec. 105) makes it clear* that the exemption for Federal obligations extends to every form of taxation that would require either the obligation, *or the interest on it,* or both to be considered directly or indirectly in the computation of the tax, except nondiscriminatory franchise taxes (or other nondiscriminatory nonproperty taxes imposed in lieu thereof) on corporations and except estate or inheritance taxes. [Emphasis added.] *Id.* at 2773.

█ It is noteworthy that the committee reports do not refer to the line of cases beginning with *Van Allen,* although they do refer to decisions holding interest on federal securities to be exempt and state that this interpretation is made explicit by the amendment. It seems highly unlikely that the reporting committees or either house of the Congress intended, by accepting these reports and enacting the proposed legislation, to abolish a distinction which had been well established by Supreme Court decisions and which had been characterized by the Supreme Court as one so "inextricably mixed with all taxing systems" that it "cannot be disregarded without bringing them into confusion which would be little short of chaos." *Home Savings Bank v. Des Moines,* 205 U.S. 503, 518, 27 S.Ct. 571, 575, 51 L.Ed. 901 (1907). This legislative history, therefore, confirms our conclusion that the purpose of Congress was to preserve, rather than expand, what the Supreme Court had construed to be the constitutional principle embodied in section 3701. *See Society for Savings in the City of Cleveland v. Bowers,* 349 U.S. 143, 147, 75 S.Ct. 607, 609, 99 L.Ed. 950 (1955). Consequently, we hold that the county's tax plan is not illegal because of its failure to deduct the federal securities held by the bank from its net assets in determining the value of its shares.

*Discrimination Against Federal Securities*

The bank and its shareholders also attack the validity of the county's method of assessing the bank's shares for taxation on the ground that it discriminates against United States obligations as an investment for banks. In an argument supporting this contention, *amici curiae* appearing on behalf of various banking associations assert that this discrimination consists of deducting the assessed value of the bank's real estate in computing the value of the shares without a similar deduction of obligations of the federal government held by the bank. They insist that the tax on bank shares imposed by article 7166 is unconstitutional because it is levied on the difference between the actual cash values of each share and the proportionate amount per share at which the bank's real estate is assessed for taxation. This discrimination, they argue, makes real estate a more attractive investment for the bank than federal securities and, therefore, is an unlawful interference with the federal government's power to

borrow money, citing *Schuylkill Trust Co. v. Pennsylvania*, 296 U.S. 113, 56 S.Ct. 31, 80 L.Ed. 91 (1935).

We do not agree that the tax is an unlawful discrimination against federal securities. Article 7166 does not exempt the bank's real estate from taxation, but rather requires the bank to render it for taxation separately. In *Schuylkill*, by contrast, the trust company paid no tax on certain securities which were deducted from its assets in computing the tax on its shares because those securities were exempt from taxation. *Schuylkill* holds that to deduct other exempt securities from the bank's assets without deducting also federal securities in computing a tax on the company's shares unlawfully discriminates against federal securities.[6] No such discrimination is shown in this case.

### Judgment

For the reasons stated, our former opinion is withdrawn, the appellees' motion for rehearing is granted, and appellants' motion for rehearing is overruled. Accordingly, the judgment of the trial court is affirmed.

AKIN and ROBERTSON, JJ., concur and join in this opinion.

ROBERTSON, Justice, concurring.

On submission of this case and in the original briefs filed by appellees, section 5219 of the Revised Statutes of the United States was not called to our attention and argued as authorizing taxation such as that here involved. Consequently, that statute was not considered by this court in its original deliberations or opinion. In their motion for rehearing appellees now, for the first time, raise the consent statute in support of the interpretation they argued for in their original briefs. This argument places the case in a posture entirely distinct from the position in which it was originally presented to this court.

In our original opinion we relied heavily on *Montana Bankers Association v. Montana Department of Revenue*, 580 P.2d 909 (Mont.1978). Apparently, the argument now urged by appellees was not presented to that court either, although it did cite section 5219 (12 U.S.C. § 548) for another proposition. This being so, we must assume that the argument now advanced by appellees was not called to the attention of the Montana court in the form in which it is here argued and thus the argument with which we are presented was not considered by that court.

In *any* case, it is the function of this court, as a representative of the people it serves, to strive for a just resolution of disputes under the law. In *this* case, we are compelled, both legally and morally, to apply the law as enacted by the Congress and as interpreted by our Supreme Court. Anything less would be a breach of that sacred trust invested in us by those we represent.

In view of the foregoing, I concur in the opinion of the Chief Justice affirming the judgment of the lower court.

### ON APPELLANTS' MOTION FOR REHEARING

GUITTARD, Chief Justice.

The principal point made in the motion for rehearing is that since the express con-

---

**6.** The *Schuylkill* opinion shows that some of the securities exempted by the Pennsylvania statute were shares in corporations which had paid a tax on their capital analogous to the Texas franchise tax. The Court evidently treated these shares like other exempt shares because the corporations holding them paid no tax. This interpretation of the *Schuylkill* opinion is confirmed by the opinion on the subsequent appeal of that case, *Schuylkill Trust Co. v. Pennsylvania*, 302 U.S. 506, 510 [58 S.Ct. 295, 297, 82 L.Ed. 392] (1938). Mr. Justice Roberts, again speaking for the Court, explained his opinion on the earlier appeal as holding "that the exclusion from the base of a proportion of the *tax-exempt* shares of Pennsylvania corporations and the refusal of like treatment of federal securities, operated as an unconstitutional discrimination against the latter." (Emphasis added.) This treatment of both classes of shares as exempt from tax, so far as the share-holding corporation is concerned, is consistent with the distinction in *Van Allen*, between a tax on a corporation and a tax on its shareholders, which the first *Schuylkill* opinion expressly recognized and reaffirmed.

sent to state taxation of bank shares formerly contained in section 5219 of the Revised Statutes, 12 U.S.C. § 548 (1964), was deleted by the sweeping revision of that section in 1969, there is no longer any congressional consent to taxation of bank shares which can be recognized as an exception to the exemption of federal securities in section 3701 of the Revised Statutes, 31 U.S.C. § 742 (1976). The 1969 revision deletes provisions specifically authorizing certain taxes on national banks and their shareholders and provides simply that a national bank shall be treated as a bank organized under the law of the state where its principal office is located. 12 U.S.C. § 548 (1976).

■ This argument may be plausible if only the current language of sections 5219 and 3701 is considered apart from the history of these two statutes. Nevertheless, since the revision of section 5219 does not expressly mention taxation of federal securities, the problem is one of construction, and we cannot properly determine the intent of these sections without reference to that history. Since we have concluded, for the reasons stated in our prior opinion, that the 1959 amendment to section 3701 was not intended to extend the tax exemption of federal securities to shares in banks holding federal securities, the question then becomes whether the 1969 revision of section 5219 was intended to have that effect. In considering this question, we are mindful of the rule that tax exemptions are strictly construed against the party asserting the exemption. *Conference of Major Religious Superiors of Women, Inc. v. District of Columbia*, 348 F.2d 783, 785 (D.C.Cir.1965); *Lutkins v. United States*, 312 F.2d 803, 805, 160 Ct.Cl. 648 (1963).

Our study of the 1969 revision of section 5219 and its legislative history gives no support to the contention that it was intended to extend the exemption so as to restrict the taxation of bank shares. That revision was made by Public Law 91–156. Act of Dec. 24, 1969, Pub.L.No.91–156, §§ 1(a), 2(a), 83 Stat. 434. We have examined the proceedings in Congress at the time Public Law 91–156 was under consideration. Cong.Rec. 35399 (November 21, 1969), 38634 (December 12, 1969); 1969 U.S. Code Cong. & Ad.News 1597. Public Law 91–156 delayed final application of the revised section 5219 for two years and provided for that period a temporary amendment by the terms of which the states' authority to tax national banks was broadened to include sales taxes and documentary-stamp taxes, but continued the authority to levy the taxes previously authorized, including bank-share taxes. Public Law 91–156 also directs the board of governors of the Federal Reserve System to make a study of the probable impact on the banking system and other economic effects of the permanent revision. Pursuant to these directions, the board prepared an extensive report to the Committee on Banking, Housing and Urban Affairs of the United States Senate, entitled STATE AND LOCAL TAXATION OF BANKS. Board of Governors of Federal Reserve System, 92d Cong., 2d Sess., REPORT ON STATE AND LOCAL TAXATION OF BANKS (Comm. Print 1972) (hereinafter cited as STATE AND LOCATION TAXATION OF BANKS). This report reviews the various amendments to section 5219 and confirms the impression stated in our prior opinion that the purpose of the 1969 amendment was to broaden rather than to restrict the authority of state and local governments to tax national banks. STATE AND LOCAL TAXATION OF BANKS, *supra* at 9, 24.

According to this report, the intent of Public Law 91–156 to broaden rather than restrict state authority is shown by the fact that its enactment was precipitated by two restrictive decisions of the Supreme Court, *First Agricultural Nat'l Bank v. State Tax Commission*, 392 U.S. 339, 88 S.Ct. 2173, 20 L.Ed.2d 1138 (1968), and *Dickinson v. First Nat'l Bank*, 393 U.S. 409, 89 S.Ct. 685, 21 L.Ed.2d 634 (1969), which invalidated state sales and use taxes and state documentary-stamp taxes with respect to national banks. STATE AND LOCAL TAXATION OF BANKS, *supra* at 336. Both the temporary amendment and the permanent revision of section 5219 authorized such taxes. The

purpose of the temporary amendment was not to permit the states to find additional sources of revenue in lieu of taxes that would no longer be available, as suggested in the motion for rehearing. Its purposes, rather, were (1) to require the states to enact affirmative legislation if they desired to extend their general taxing statutes to national banks that had previously been exempt from such taxation because of the restrictions in section 5219, (2) to give the states an opportunity to amend statutes that had previously been tied textually to specific authorizations in section 5219, and (3) to continue the prohibition of state and local taxes on intangible property of national banks until the probable impact of such taxes could be studied by the board of governors of the Federal Reserve System. *Id.* at 312–18.

Reviewing the history of bank share taxes, the report recognizes the *Van Allen* rule that such taxes are levied on shareholders rather than on the banks, *id.* at 44, 231–234, 382–395, and also recognizes that in view of large holdings of federal securities by national banks, allowance of deductions for federal securities held by the banks would have the effect of nullifying all share taxes. *Id.* at 233. The report mentions the 1959 amendment to section 3701, 31 U.S.C. § 742 (1976), and proposes modification of the exemption of interest on federal securities. The discussion assumes that the existing exemption of such securities from property taxation would continue. *Id.* at 66, 67. The report gives no indication that either the 1959 amendment to section 3701 or the 1969 revision of section 5219 had any effect, separately or together, on the taxation of bank shares as previously recognized under the *Van Allen* rule.

In Public Law 91–156, Congress recognized the legality of bank shares taxes by continuing the authority of the states to impose these taxes in the temporary amendment, which retains the existing provisions authorizing states to impose certain taxes on national banks, including bank share taxes, and adds authority to impose certain specified additional taxes before the permanent revision takes effect. This con-

tinuation would have been pointless if the effectiveness of bank share taxes had been nullified by the 1959 amendment to section 3701. 31 U.S.C. § 742 (1976). That it was not pointless is demonstrated by statistical tables in the report, which show that in 1969–70 bank share taxes were in force in twenty-seven states and formed a substantial portion of the taxes paid by national and state banks at that time. *Id.* at 17, 386–88. Thus, it appears that abrogation of the *Van Allen* rule in 1969 would have had a substantial impact, which is not mentioned in the report.

It is most unlikely that this impact would have been overlooked if the 1969 revision had had the effect of withdrawing previous congressional consent to state taxation of the full shareholder interest in national bank shares as previously provided in section 5219, because Congress in 1969, as well as in earlier years, was sensitive to both the interests of the banking industry and the revenue needs of the state and local governments, as both the text of Public Law 91–156 and the report of the board of governors demonstrate. There is no evidence, however, in any legislative history that Congress considered either in 1959 or 1969 the economic impact of abrogation of the *Van Allen* rule, which the supreme court had previously recognized as one that could not be disregarded without bringing state and local taxing systems into confusion little short of chaos. *Home Savings Bank v. Des Moines*, 205 U.S. 503, 518, 27 S.Ct. 571, 575, 51 L.Ed. 901 (1907).

In the present case, the banks and their shareholders recognize in their motion for rehearing that the *Van Allen* rule originally rested on two grounds, (1) the distinction between taxation of shares and taxation of bank assets, and (2) congressional consent to state taxation of bank shares, as expressed in section 5219. Each of these grounds was sufficient in itself to uphold the validity of bank share taxes without any deduction for federal securities held by the banks. Neither the 1959 amendment to section 3701 nor the 1969 revision to section 5219 expressly abolishes this rule. The 1959

**826**

amendment does not affect the consent ground. Neither does the 1969 revision of section 5219 abrogate the *Van Allen* rule because its sweeping language clearly broadens rather than restricts the states' authority to levy taxes by giving them authority to treat national banks the same as state banks. If national banks must be treated the same as state banks, then shareholders in national banks must be treated the same as shareholders in state banks. Since the power of the states to tax the shares of state banks does not depend on congressional consent, except to the extent that federal securities may be involved, the *Van Allen* rule, previously applicable to state banks and their shareholders under the *Lander* decision, was continued by the 1969 revision with respect to national banks and their shareholders, whatever its original basis may have been. To hold that Congress intended by the 1969 revision to withdraw its consent to state taxation of bank shares to the extent of federal securities held by the banks is neither required by the language of Public Law 91–156, nor by any reasonable interpretation of that law in the light of its legislative history. Such a holding would be contrary to the principle above stated that tax exemptions are strictly construed against the party asserting the exemption. Consequently, we adhere to our opinion that the county properly assessed the tax on the shares of stock in question without any allowance or deduction for federal securities held by the bank.

Appellants' motion for rehearing is overruled.