**Raul MEZA, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 12465.**

Court of Civil Appeals of Texas, Austin.

Oct. 27, 1976.

---

Malcolm Greenstein, Austin, for appellant.

Robert O. Smith, Dist. Atty., Travis County, Alton Lynn Ellison, Jr., Asst. Dist. Atty., Travis County, Austin, for appellee.

SHANNON, Justice.

This appeal is from the judgment of the juvenile court of Travis County waiving its exclusive original jurisdiction and transferring appellant, Raul Meza, Jr., to another district court for a criminal trial. We will affirm that judgment.

The State alleged that on December 31, 1975, Meza, age fifteen, committed aggravated robbery at a U–Tote–M store in Austin. The State alleged further that Meza,

while engaged in theft of personal property, shot the store manager.

By four points of error appellant seeks to reverse the judgment. Appellant's first complaint is that the court erred in overruling Meza's motion suggesting "mental illness or defect." By that motion Meza claimed that ". . . as a result of mental disease or defect he is mentally ill or suffers from a mental illness or defect." Appellant requested the court to order an appropriate medical and psychiatric inquiry to assist in determining ". . . whether he is mentally ill or suffers from a mental illness or defect . . ."

Texas Family Code Ann. § 55.04 provides in part as follows:

"(a) No child who as a result of mental disease or defect lacks capacity to understand the proceedings in juvenile court or to assist in his own defense shall be subjected to discretionary transfer to criminal court, adjudication, disposition, or modification of disposition as long as such incapacity endures.

"(b) If it appears to the juvenile court, on suggestion of a party or on the court's own notice, that a child alleged or found to have engaged in delinquent conduct or conduct indicating a need for supervision may be unfit to proceed, the court shall order appropriate medical and psychiatric inquiry to assist in determining whether the child is unfit to proceed because of mental disease or defect.

"(c) The court or jury shall determine from the psychiatric and other evidence at a hearing separate from, but conducted in accordance with the requirements for, the adjudication hearing whether the child is fit or unfit to proceed."

.    .    .    .    .

■ Appellant, by the terms of his motion, invoked the protection offered by § 55.04. The court erred in overruling the motion.

Appellant, however, did not discharge his burden of demonstrating that the error of the court amounted to such a denial of his rights as was reasonably calculated to cause and probably did cause the rendition of an improper judgment. Tex.R.Civ.P. 434. See *D. L. C. v. State,* 533 S.W.2d 157 (Tex.Civ. App.1976, no writ). Pursuant to a previous court order, Dr. David Poole, a psychologist, had examined Meza. Dr. Poole's report was in evidence, and it contained nothing to indicate that Meza suffered from mental disease or defect. At trial appellant called Dr. Poole, but no effort was made to show that Meza was mentally ill. The State called Dr. Jaime Jaramillo, a psychiatrist, who had examined Meza. Jaramillo saw no symptoms of psychosis or schizophrenia in Meza and was of the view that Meza was fully oriented. Dr. Jaramillo testified further that he did not detect any hallucinations, delusions, or any sort of disorder in Meza.

■ The admission into evidence of his oral confession is the foundation for appellant's second point of error. Without the confession and the "fruits" of the confession, appellant says there was not ". . . enough competent evidence to expect a grand jury to return an indictment." Whether a grand jury might be expected to return an indictment is one factor to be considered by the court in a transfer hearing. Tex.Family Code Ann. § 54.02(f)(3). Specifically, appellant claims that before an oral confession of a child is admissible in evidence, Tex.Family Code Ann. § 51.09 (1975) requires that the child be given notice of his "Miranda" rights by a magistrate prior to the time the confession is taken.[1] Prior to confession, appellant was given notice of his rights by a policeman rather than by a magistrate. It should be added that appellant does not attack the admission of the confession upon the basis that § 51.-09(b)(2) (1975) is unconstitutional.

Texas Family Code Ann. § 51.09(b)(1) (1975) requires that before the *written* confession of a child is admissible in evidence, the child must be given notice of his rights by a magistrate before the confession is taken. Section 51.09(b)(2) (1975) refers to

1. *Miranda v. State of Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

the admissibility of *oral* confessions. That section provides simply that the confession of a child is admissible in evidence if ". . it be made orally and the child makes a statement of facts or circumstances that are found to be true, which conduct tends to establish his guilt, such as the finding of secreted or stolen property, or the instrument with which he states the offense was committed."

■ Meza was afforded protections beyond those required by § 51.09(b)(2) (1975). He was given notice of his rights by the investigating officer prior to the time he made an oral confession as to his part in the robbery. The officer's statement to Meza included a warning that he, as a juvenile, could be certified and tried as an adult. Although Meza was of low average intelligence, the evidence was that he was capable of understanding the nature of the officer's warnings. In fact, Meza testified that he understood the warnings. Prior to confession, Meza was not held for any long period of time. He gave the confession freely and not after any lengthy period of interrogation. Nothing in the record suggests star-chamber methods in obtaining the confession. After confessing, Meza directed the officers to the location where he had hidden the extra rifle shells which he had carried during the robbery. Under the circumstances, and by the authority of § 51.09(b)(2) (1975), the court properly admitted appellant's oral confession.

■ Point of error three is that the court erred in finding that appellant was of sufficient maturity and sophistication that he should be treated as an adult. The "sophistication and maturity" of the child is one factor, among others, to be considered by the court in determining whether or not to transfer the child to criminal district court for trial. Tex.Family Code Ann. § 54.-02(f)(4).

Meza was not a sophisticated or mature child. Prior to hearing, the court obtained a diagnostic study, social evaluation, and full investigation of the child, his circumstances, and the circumstances of the alleged offense. § 54.02(d). Gretchen Runge, a physician and medical director of the Austin Evaluation Center, Inc., reported to the juvenile court that Meza's overall performance on psychological tests ". . fell in the upper part of the range of borderline intelligence. Performance score was somewhat higher than verbal. Raul does poorly in language areas. Achievement testing indicates that his academic level is below grade level."

Also, as a part of the diagnostic study, Meza was examined by David R. Poole, a psychologist. Part of Dr. Poole's report is as follows:

"TEST RESULTS

"Roy [Raul] is an attractive adolescent of average height and weight, with well-groomed, ear-length dark hair. He appeared for teh [*sic*] session appearing suspicious, depression [*sic*], and had an air of underlying anger. He wore a T-shirt, and jeans to the session, and had tatooed arms.

"Roy says that he is the 2nd of six siblings, currently living with the mother and step-father in Austin; he says that he never knew his father, and that his mother married his present step-father earlier this year. There have been other step-fathers in this family, and apparently the home situation has been somewhat chaotic for a number of years. Roy himself has had chronic school and behaviour problems, and has been seen at the Child Guidance Center and the Austin Evaluation Center; assessment work has been undertaken by these agencies and by the school district, and juvenile authorities have been involved with the boy since 1973, for offenses such as shoplifting, arson, and burglary. Considerable social history information and evaluation summaries are available to the court.

"Roy manifests no particular neurological difficulty, though his Bender-Gestalt figures were mildly immature for his age. Intellectually, he probably functions within the low average range (IQ 80–90). There were no indications of a thought disorder or psychosis.

"His projectives characterized a profoundly depressed youngster with very low self-esteem. He appears to have long felt 'outside' his family, cut off from both his parents. He is an intensely lonely youngster, who projects himself as having been without guidance or caring from adults. He sees males as hostile toward him, and as inturders [sic] and aggressive thieves in his life.

"He is an impulsive young man, who seems generally prone to act before thinking, and to act out his feelings in direct, physical ways. He is not prone to be very insightful or verbal, and consequently has had difficulty getting very much perspective about his situations. He has bad feelings about himself that he probably experiences as rather threatening and diffuse, and his acting out and his anger seem to function as a somewhat desparate [sic] defense against this very deep depression and self-rejection. He is also prone to project hostile feelings onto others, and is prone to see them as judgemental [sic], cold and angry towards him. He doesn't appear to expect much of himself or his life, and seems a strong candidate at this point for a life of recidivism or various direct or indirect expressions of suicidal inclinations.

"Dynamics involve an apparently seductive, sporadically involved mother, who on the one hand apparently tantalizes the boy with covert promises of acceptance and concern, but who has problems following through on this. Fathers evidently have been only sporadically involved, and have primarily served to distract the mother from her relationship with her son. The instability and inconsistency in the home, particularly in terms of the mother's expressions of affection for him, have made separation very difficult, and have left Roy feeling quite guilty and badly about himself. He perceives himself as rearing himself ultimately alone, without help or encouragement from others. These issues have apparently been chronic, and a stormy adolescence could perhaps have been foretold. Residential treatment continues to be strongly indicated in this case, from the point of view of Roy's emotional development.

"Developmentally, Roy has some serious gaps, primarily in terms of early tasks, such as separation and individuation from the mother in childhood. He currently feels alienated and friendless, and is decidely immature from a socio-interpersonal point of view."

■ Section 54.02(f)(4) enumerates only one factor among several required to be considered by the court in the transfer hearing. Under the circumstances of this case, the error of the court concerning the sophistication and maturity of Meza does not require reversal of the judgment. In this connection the evidence showed that Meza committed the offense in an aggressive and premeditated manner. Derly Ramirez, the store employee whom Meza allegedly shot, testified that after midnight two men entered the store armed with a shotgun and a rifle. After forcing Ramirez to open the cash register, one of the men, allegedly Meza, forced Ramirez to enter the freezer compartment, turn away, and kneel down. The man then shot Ramirez.

The blemished record and previous history of Meza, which the court was required to consider, showed Meza was accused of shoplifting in October, 1973, of burglary in November, 1973, of attempted burglary in January, 1974, and arson in January, 1974. As a result of the alleged act of arson, Meza was detained at the juvenile home. After a few weeks he escaped from the juvenile home, but was returned by his mother. On March 30, 1974, Meza was given a weekend leave with his mother. During the same weekend he was arrested and charged with the burglary of an automobile.

On April 5, 1974, after a dispositional hearing, Meza was placed in the custody of the Texas Youth Council, and was sent to the Giddings State Home and School. The caseworker at that institution reported, "Roy has been a discipline problem while at Giddings. In his first few months, he did run away and broke into a country store.

**194**

This was perhaps his most serious infraction."

 Appellant's final point claims that the court erred in finding that appellant could not be rehabilitated by the use of procedures, services and facilities currently available to the juvenile court. That point will be overruled.

Under the point of error, appellant says there was insufficient evidence as ". . . to what procedures, services and facilities were currently available to the juvenile court." In this connection the court in its findings stated, "The court, of its knowledge, is well aware of the facilities, services and procedures it has at its disposal." The court's order discloses that the matters listed in § 54.02(f)(6) were considered, and the order states specific reasons for the waiver. The fact that some of the recitations constitute conclusions does not require a reversal. *In re W. R. M.,* 534 S.W.2d 178 (Tex.Civ. App.1976, no writ).

The final contention under this point of error is that there was insufficient evidence that appellant could not be rehabilitated. We have previously listed much of the evidence from which the court could have reasonably concluded that Meza could not be rehabilitated.

The judgment is affirmed.