Tony Lorenzo FRANKLIN, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–88–00197–CR.

Court of Appeals of Texas,
Dallas.

July 17, 1989.

Russ Henrichs, Dallas, for appellant.

Donald G. Davis, Dallas, for State.

Before WHITHAM, LAGARDE and KINKEADE, JJ.

KINKEADE, Justice.

Tony Lorenzo Franklin appeals his jury conviction of aggravated robbery. The jury assessed punishment at ninety-nine years' confinement. Franklin claims that the trial court erred in 1) admitting a written statement which Franklin gave to a police officer; 2) failing to grant Franklin's motion for a mistrial regarding the prosecutor's reference to the parole laws of Texas; and 3) overruling Franklin's objection to the prosecutor's argument during the punishment phase of the trial. We disagree and affirm the trial court's judgment.

The evidence, viewed in the light most favorable to the verdict, shows that on August 29, 1987, Mary Annette Dunlap and her fiance, the deceased, Johnny Jay Griwatch, a dentist, had a date to go to a Cotillion Party at Fair Park. After the party at the Hall of State, they walked back to their car in the parking lot. Griwatch unlocked the passenger door for Dunlap. She entered the car and leaned over to unlock the driver's side door. Griwatch had taken a few steps toward the front of the car when he was approached by two black males, one of whom was

Franklin. Franklin, who was sixteen years old at the time, held a gun in his hand and pointed it at Griwatch's head. Griwatch said, "I don't have anything. You can have anything. Here's my pager." The two men took the pager from Griwatch. As Dunlap bent over to call the police on the car phone, she heard a muffled gunshot and heard a body "bang against the car." She got out of the car and saw Griwatch sitting on the ground, leaning against the car with a bullet hole in his head. Blood was gushing from the bullet hole. Griwatch later died at the hospital of the gunshot wound. Evidence showed that the muzzle of the gun had been placed against his forehead when the gun was fired.

Acting on a tip from an informant, John Westphalen, an investigating officer, arrested Franklin at his aunt's apartment. When he entered the apartment, he asked Franklin, "Tony, do you know why we're here?" Franklin replied, "Yes." He immediately gave Franklin the *Miranda* warnings. They walked to the squad car and Westphalen asked Franklin if the gun was in the apartment they had just left. Franklin said that it was not, but that he had given it to Darrell Griffith, a cousin. Franklin took the officer to where Griffith lived. Griffith was not home at this time, but the officer went back at a later time. Griffith took the officer to White Rock Creek where the gun was buried. Evidence from ballistics tests proved that was the gun used to kill Griwatch.

Upon discovering that he was sixteen years of age, Franklin was taken to the Youth Section of the Dallas Police Department. He was taken before two magistrates, Judge O'Neal and Judge Toscano plus a third party witness. Judge Toscano was a new judge learning the process from Judge O'Neal. Franklin was given the statutory warnings required by the Texas Family Code § 51.09 (Vernon 1986), which are as follows:

(1) when the child is in a detention facility or other place of confinement or in the custody of an officer, the statement is made in writing and the statement shows that the child has at some time prior to

the making thereof received from a magistrate a warning that:

(A) he may remain silent and not make any statement at all and that any statement he makes may be used in evidence against him;

(B) he has the right to have an attorney present to advise him either prior to any questioning or during the questioning;

(C) if he is unable to employ an attorney, he has the right to have an attorney to counsel with him prior to or during any interviews with peace officers or attorneys representing the state;

(D) he has the right to terminate the interview at any time;

(E) if he is 15 years of age or older at the time of the violation of a penal law of the grade of felony the juvenile court may waive its jurisdiction and he may be tried as a adult; and

(F) the statement must be signed in the presence of a magistrate by the child with no law enforcement officer or prosecuting attorney present. The magistrate must be fully convinced that the child understands the nature and contents of the statement and that the child is signing the same voluntarily. If such a statement is taken, the magistrate shall sign a written statement verifying the foregoing requisites have been met.

The child must knowingly, intelligently, and voluntarily waive these rights prior to and during the making of the statement and sign the statement in the presence of a magistrate who must certify that he has examined the child independent of any law enforcement officer or prosecuting attorney and determined that the child understands the nature and contents of the statement and has knowingly, intelligently, and voluntarily waived these rights.

After Franklin said that he understood the warnings, he was returned to Officer Westphalen and taken back to the Youth Section. Franklin gave an oral statement to Officer Westphalen who then wrote it down. Subsequently, Judge Toscano again went over the statutory warnings and asked Franklin whether the written statement was what Franklin had intended. Franklin said that it was what he intended. Judge Toscano then gave Franklin an opportunity to make any changes in the statement, but Franklin declined to do so. Franklin, Judge O'Neal and the third-party witness each signed the statement; no officer or prosecuting attorney was present. Judge Toscano then signed a certificate verifying the waiver of rights pursuant to § 51.09(b)(1)(F). The juvenile court waived its jurisdiction over Franklin and he was tried and convicted as an adult.

■ In his first point of error, Franklin challenges the admissibility of his written statement which was used as evidence at trial. The written confession of a child is admissible if the child is given notice of his statutory rights by a magistrate before the confession is taken. TEX.FAM.CODE ANN. § 51.09(b)(1) (Vernon 1986); *see also Meza v. State*, 543 S.W.2d 189, 190–191 (Tex.Civ.App.—Austin 1976, no writ). Even if the statutory requirements are met, the written confession may be inadmissible if there has been a prior inadmissible and illegal oral confession. *B.A.G. v. State*, 715 S.W.2d 790, 793 (Tex.App.—Dallas 1986, no pet.) Franklin contends that his written confession was made inadmissible by his prior oral statement to Officer Westphalen about the gun.

■ The Texas Code of Criminal Procedure states that:

The statement of an accused may be properly used when the statement contains assertions of facts or circumstances that are found to be true and which conduce to establish the guilt of the accused, such as the finding of secreted or stolen property or the instrument with which he states the offense was committed.

TEX.CODE CRIM.PRO.ANN. art. 38.22 § 3(c) (Vernon Supp.1989). Franklin's oral statement regarding the gun used in the offense aided in establishing his guilt because the statement led to the recovery of the gun. Therefore Franklin's oral state-

ment was admissible. *Curtis v. State*, 640 S.W.2d 615, 618 (Tex.Crim.App.1982).

■ Franklin relies on the "cat out of the bag" theory which states that a confession is not admissible if a prior oral statement was inadmissible. *B.A.G.*, 715 S.W.2d at 793. Franklin's reliance is not well founded because his prior oral statement is admissible under § 38.22 of the Code of Criminal Procedure. *Gifford v. State*, 630 S.W.2d 387, 390 (Tex.App.—Austin 1982, no writ).

■ Franklin's written statement was admissible as evidence based upon the Texas Family Code § 51.09(b)(1) (Vernon 1986) which states: "The child must be given notice of his statutory rights by a magistrate before the confession is taken." Franklin was given the statutory warnings by Judge Toscano. Franklin stated that he understood these warnings. Franklin then freely and voluntarily gave his statement to Officer Westphalen. Section 51.09(b)(1) was followed, making Franklin's written statement admissible as evidence. We overrule Franklin's first point of error.

■ Franklin next contends that the trial court erred in failing to grant his motion for mistrial regarding the prosecutor's jury argument referring to the parole laws of Texas. During his final arguments in the punishment phase of trial, the prosecutor made the following argument:

> "What about deterring other people? Counsel says that, you know, it probably won't deter anybody and I disagree with that. You think if you give him a slap on the wrist, a 60–year sentence or something like that, a sentence like that, that that's going—that type of message down at the prison, can't you just imagine when he goes down there, well, what are you down here for?
>
> Well, I shot a guy right between the eyes and I confessed to it and I almost bamboozled the jury into thinking that somebody else did it and they only gave me a 60 year sentence slap on the wrist.
>
> You did what? What county did you come from?
>
> Dallas County.

> Are you going to make your verdict an invitation to get them to come up here to commit their crimes, or are you going to make it a warning to them to stay away from Dallas County because juries in Dallas County are tough and they do the right thing?
>
> Makes sense to me that a strong verdict sends the right message down there, and a slap on the wrist sends the wrong message. We've got enough of them here already. They are letting them out, as you know, by the arm loads.

Franklin objected to this argument as an improper comment on the parole laws. The trial court sustained the objection, instructed the jury to disregard the comment and denied Franklin's motion for a mistrial.

■ The proper areas of jury argument are 1) summation of the evidence, 2) reasonable deductions from the evidence, 3) answers to the argument of opposing counsel, and 4) pleas for law enforcement. *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex. Crim.App.1973). An improper argument is cured when the trial court promptly instructs the jury not to consider the comment. *Thomas v. State*, 578 S.W.2d 691, 696 (Tex.Crim.App.1979)

In the present case, the court timely instructed the jury to disregard the prosecutor's comment. We find that the trial court cured any prejudicial effects which the prosecutor's statement might have caused. *Thomas*, 578 S.W.2d at 696; *Cooper v. State*, 578 S.W.2d 401, 403 (Tex.Crim.App. 1979). We overrule Franklin's second point of error.

In his third point of error, Franklin complains that the trial court erred in overruling his objection to the prosecutor's statement expressing a wish that the law would allow him to "blow [Franklin's] brains out." Franklin contends that the prosecutor's statement was a call for summary punishment which went beyond the limits of proper jury argument.

■ A prosecutor exceeds the limits of proper jury argument if he declares that "he would have visited summary punishment upon the Defendant." *Masten v.*

*State*, 100 Tex.Crim. 30, 271 S.W. 920, 922 (1925). In *Masten*, the prosecutor stated to the jury, "John Henard is to be condemned for bringing this case into court instead of taking the law into his own hands as you, gentlemen of the jury, or I would have done." *Masten*, 271 S.W. at 922. Similarly, in *McFarlane v. State*, 158 Tex.Cr.R. 194, 254 S.W.2d 136, 137 (1953), the prosecutor argued, "And also if any man beat my wife up like he beat her up, they would not be trying him, but they would be trying me for murder probably." The court in that case found the prosecutor's statement improper.

The present case is distinguishable from *Masten* and *McFarlane*. The prosecutor in this case stated in his final argument, "You know, sometimes I wish that the law would allow me or one of you—and I bet there's some of you on this jury who would do it if the law allowed you to—I wish the law would allow me to do to this defendant what he did to that young man, put that .38 right between his eyes and blow his brains out. But, no, the law doesn't allow us to do that." The prosecutor did not declare that he would have summarily punished the defendant, as did the attorneys in *Masten* and *McFarlane*. He only stated what he wished the law allowed. He stated that he recognized the bounds of the law and that he knew that the jury recognized them also. We hold that the prosecutor argued within the proper scope and overrule the third point of error. The trial court's judgment is affirmed.

WHITHAM, J., dissents.

WHITHAM, Justice, dissenting.

I respectfully dissent. I would sustain appellant's third point of error and reverse and remand. I cannot agree that the present case is distinguishable from *Masten v. State*, 100 Tex.Crim. 30, 271 S.W. 920, 922 (1925) and *McFarlane v. State*, 158 Tex.Cr.R. 194, 254 S.W.2d 136, 137 (1953). I refuse to judicially condone calls for mob or individual violence made in the operation of the Texas judicial system. In the present case, the prosecutor remarked

in his final jury argument at the punishment phase of the trial:

> You know, sometimes I wish that the law would allow me or one of you—and I bet there's some of you on this jury who would do it if the law allowed you to—I wish the law would allow me to do to this defendant what he did to that young man, put that .38 right between his eyes and blow his brains out.

In my view, the majority reads the prosecutor's remark too narrowly when it treats the remark as a statement of what the "[prosecutor] wished the law allowed." Indeed, the majority fails to heed the admonition given in *McFarlane*: "State's counsel, in argument to the jury, should not, *by inference or otherwise*, convey to the jury the impression that any state of facts would authorize the infliction of summary punishment by mob or individual." *McFarlane*, 254 S.W.2d at 137 (emphasis added). In the present case, the majority overlooks *McFarlane's* instruction that the prosecutor not by "inference or otherwise" incite to mob or individual violence. To my mind, the majority's reliance on the prosecutor's "wish list" disregards the prohibition on "by inference or otherwise." Indeed, the prosecutor's "wish list" is a clear but inferential call to infliction of summary punishment by mob or individual.

The Court of Criminal Appeals teaches that we, as a nation of free and independent people, are dedicated to the principle that no citizen shall be deprived of his liberty except by "the due course of the law of the land" (article I, section 19 of the Texas Constitution and the Fifth and Fourteenth Amendments to the Federal Constitution). *McFarlane*, 254 S.W.2d at 137. This means that punishment for crime will be imposed only by and through a trial in accordance with law. When summary punishment is recognized, sanctioned, or imposed by governmental authority, this constitutional guarantee is destroyed. *McFarlane*, 254 S.W.2d at 137. In *McFarlane*, the Court of Criminal Appeals concluded that the prosecutor's call for summary punishment constituted reversible error. *McFarlane*, 254 S.W.2d at 137. Therefore, the deprivation of due process occurring

during the punishment phase of trial in the present case requires reversal. Consequently, in the present case, I would sustain appellant's third point of error, reverse the trial court's judgment and remand for new trial. *See* TEX.CODE CRIM.PROC. ANN. art. 44.29(b).